[Cite as *Davis v. Akron*, 2014-Ohio-2511.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| MARK DAVIS | | C.A. No. 27014 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF AKRON | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CV 2012 04 1871 |

DECISION AND JOURNAL ENTRY

Dated: June 11, 2014

CARR, Judge.

{¶1}	Appellant, City of Akron, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}	This action arises out of a motorcycle accident that occurred on August 28, 2011, on Rhodes Avenue in Akron, Ohio. Rhodes Ave. is a one-way, three-lane road. As Mark Davis drove his motorcycle southbound in the center lane, he approached the Bartges Street intersection and noticed that cars were stopped in the left and center lanes due to a red light. As the light turned green, Davis merged into the right lane and drove over a sewer manhole cover located in the intersection. The manhole cover caused the front end of the motorcycle to fly into the air, and Davis' handle bars began to shake. Davis let off the accelerator and regained control as he drove over a second manhole cover. Davis decided to switch lanes again in light of the fact that he had just run over two successive manhole covers. As Davis looked into his mirror and

activated his turn signal, he hit a third manhole cover that punctured his front tire. The motorcycle began to shake uncontrollably before Davis ultimately lost control and crashed to the ground. Davis skidded across the pavement before coming to a stop.

{¶3} Davis was hospitalized for three days to be treated for road rash and third degree burns. Several days after the incident, Davis returned to the scene of the accident to see what had punctured his tire. Davis discovered that the third manhole cover he ran over was profoundly damaged. Metal from the manhole cover was jutting several inches above ground, and the manhole cover was surrounded by a cavernous pothole.

{¶4} Davis filed a complaint against the City of Akron alleging one count of negligence per se for failure to maintain the manhole cover that caused the motorcycle accident. Davis alleged that the City failed to maintain the street pursuant to R.C. 723.01. The City filed a timely answer to the complaint. The City subsequently filed a motion for summary judgment. Davis filed a memorandum in opposition to the motion, and Davis replied thereto. The trial court issued a journal entry denying the motion for summary judgment on the basis that there remained genuine issues of material fact.

{¶5} The City filed a timely notice of appeal. On appeal, the City raises one assignment of error.

II.

**<u>ASSIGNMENT OF ERROR</u>**

THE TRIAL COURT ERRED BY DENYING THE CITY OF AKRON'S MOTION FOR SUMMARY JUDGMENT.

{¶6} In its sole assignment of error, the City argues that the trial court erred by denying its motion for summary judgment. This Court disagrees.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶10} In his complaint, Davis alleges that the City failed to maintain Rhodes Ave. in Akron as mandated by R.C. 723.01, which states:

Municipal corporations shall have special power to regulate the use of the streets. * * * [T]he legislative authority of a municipal corporation shall have the care,

supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation. The liability or immunity from liability of a municipal corporation for injury, death, or loss to person or property allegedly caused by a failure to perform the responsibilities imposed by this section shall be determined pursuant to divisions (A) and (B)(3) of section 2744.02 of the Revised Code.

{¶11} R.C. 2744.02(A) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Because the City is a municipal corporation, it qualifies as a political subdivision pursuant to R.C. 2744.01(F). When it has been determined that a party generally qualifies for immunity due to its status as a political subdivision, the second tier of the analysis is to determine whether one of the exceptions to immunity set forth in R.C. 2744.02(B) is applicable. *Sheperd v. Akron*, 9th Dist. Summit No. 26266, 2012-Ohio-4695, ¶ 16. R.C. 2744.02(B)(3) states, "[A] political subdivision is liable in damages in a civil action for injury * * * to person or property allegedly caused by * * * [the] negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads ***."

## SCOPE OF APPEAL

{¶12} At the outset of our discussion, we note that the scope of the City's appeal is limited to the immunity issue. Generally, a trial court's order denying a motion for summary judgment is not a final, appealable order. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 9, citing *State ex rel. Overmeyer v. Walinski*, 8 Ohio St.2d 23, 24 (1966). However, an exception to the general rule is set forth in R.C. 2744.02(C), which states, "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." The purpose of R.C. Chapter 2744 is to preserve the fiscal integrity of political subdivisions as "early

resolution of the immunity issue may save the parties the time, effort, and expense of trial and appeal." *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, ¶ 11, citing *Burger v. Cleveland Hts*., 87 Ohio St.3d 188, 199 (1999) (Lundberg Stratton, J., dissenting). The Supreme Court of Ohio has recognized that a court of appeals is required to exercise jurisdiction over an appeal of a trial court's decision overruling a motion for summary judgment in which the political subdivision or its employees seeks immunity. *Hubbell* at ¶ 21. Thus, to the extent that the trial court denies a political subdivision "the benefit of an alleged immunity from liability," the court of appeals "must conduct a de novo review of the law and facts." *Id.* at ¶ 20-21.

{¶13} This Court's review of the trial court record reveals that the City presented numerous arguments in support of its motion for summary judgment. One of the arguments offered by the City was that the exception to immunity articulated in R.C. 2744.02(B)(3) was not applicable in this case because the City did not have notice of the road condition that caused Davis' accident. Now on appeal, the City again argues that it was immune from liability because it did not have actual or constructive notice of the mangled manhole cover and adjoining pothole. The City also raises several arguments pertaining to the viability of Davis' underlying negligence per se claim, namely (1) that it did not owe Davis a duty because the road condition that caused that accident was open and obvious; (2) that it did not owe Davis a duty because Davis assumed the risk that led to his injuries; (3) that Davis was the proximate cause of his injuries; and (4) that Davis' contributory negligence was greater than any negligence on the part of the City. In its June 19, 2013 journal entry, the trial court denied the City's motion for summary judgment on the basis that there remained genuine issues of material fact pertaining to all of the arguments raised by the City.

{¶14} As R.C. 2744.02(C) allows a political subdivision to appeal when it is denied the benefit of statutory immunity, our review will be limited to the trial court's determination that the City was not immune from liability pursuant to R.C. 2744.02(B)(3). *Makowski v. Kohler*, 9th Dist. Summit No. 25219, 2011-Ohio-2382, ¶ 7 (An appeal pursuant to R.C. 2744.02(C) is "limited to the review of alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity."); *Devaux v. Albrecht Trucking Co. Inc.*, 9th Dist. Medina No. 09CA0069-M, 2010-Ohio-1249, ¶ 7. In support of the proposition that we should address the substance of the underlying claim, the City cited the Supreme Court of Ohio's decision in *Mussivand v. David*, 45 Ohio St.3d 314 (1989). While that decision generally discussed and analyzed the elements of negligence, it is distinguishable from this case in that it had nothing to do with the immunity of a political subdivision or the right to appeal pursuant to R.C. 2744.02(C). To the extent that the City asks this Court to address the substance of Davis' underlying negligence per se claim, those issues fall outside the scope of the instant appeal which pertains solely to whether the trial court erred in denying the City the benefit of immunity pursuant to R.C. 2744.02(A). Thus, the question before the Court is whether, at this stage in the proceedings, the City has established that it is immune from liability as a matter of law.

## DISCUSSION

{¶15} In this case, Davis was injured while driving his motorcycle over a manhole cover and adjoining pothole on Rhodes Ave. While many of the facts in this case were disputed during the summary judgment phase, it is undisputed that Davis was traveling on a public street in Akron. The City has a duty to maintain public streets under R.C. 723.01, and failure to do so can result in liability pursuant R.C. 2744.02(B)(3). The City has argued that it cannot be held liable for the injury caused by the alleged hazard because it did not have actual or constructive notice

of the hazard prior to the accident. *See Haynes v. Franklin*, 95 Ohio St.3d 344, 2002-Ohio-2334, ¶ 8 (stating that the political subdivision must have actual or constructive notice of the alleged hazard in order for the exception set forth in R.C. 2744.02(B)(3) to be applicable).

{¶16} We cannot accept the City's contention that a reasonable finder of fact could not conclude that the City had, at a minimum, constructive notice of the hazard in this case. A City has constructive notice of a hazard if it was of a nature that it could or should have been discovered, if it existed long enough to have been discovered, and its discovery would have created a reasonable apprehension of danger. *McGuire v. Lorain*, 9th Dist. Lorain No. 10CA009893, 2011-Ohio-3887, ¶ 14, citing *Harp v. Cleveland Hts.*, 87 Ohio St.3d 506, 512 (2000). Photographs of the alleged hazard submitted below revealed the existence of a compound threat to motorists - a manhole cover with jagged metal shooting into the air that butted up against a very large pothole. Undoubtedly, a reasonable person could conclude that this hazard presented a threat to the safety of anyone traversing Rhodes Ave., particularly a motorist such as Davis who was on a motorcycle. In his deposition, Davis testified that he went to the scene of the accident just days after he was released from the hospital. Davis testified that "those real raggedy steel [] spikes" were "exactly [what] caused [his] tire to go down." Davis further testified that while it is not uncommon to see a "chuckhole" while riding his motorcycle, a "chuckhole[] in front of a rigid steel structure is totally a different thing." Davis explained that such a hazard is "going to flatten the tire every time."

{¶17} Jeffrey Strauss, the public works supervisor for the City's highway maintenance division, testified during his deposition that his division was responsible for the inspection and maintenance of the City's streets, which included patching potholes. The evidence presented below showed that the City was aware that Rhodes Ave. was a problematic area with respect to

potholes. According to Strauss, the City dispatches maintenance crews that drive over every street in the spring with repair material and patches potholes. During the summer, the City hires a contractor to evaluate the condition of its streets. The City produced a complaint that had been filed on April 26, 2011, regarding several potholes near the Rhodes Ave. and Bartges St. intersection. Another document produced in discovery showed that the City repaired a storm inlet on Rhodes Ave. in the immediate vicinity of the manhole cover and pothole in question in this case. This repair was scheduled to begin on August 4, 2011, just three weeks before the accident that gave rise to this lawsuit. Strauss suggested that the maintenance crews that filled the potholes should have checked the surrounding area but he could not be certain that had happened. When shown a photograph of the pothole adjoining the manhole cover that gave rise to the instant lawsuit, Strauss did not deny that it could cause an accident, and he acknowledged that it was in need of repair.

{¶18} Rob Scarlatelli, the acting Sewer Maintenance Superintendent, was responsible for overseeing the operation and maintenance of the City's sewer system. Scarlatelli testified that 20 percent of the City's manhole covers must be inspected in a given year, meaning that each manhole is inspected on a 5-year cycle. Scarlatelli acknowledged that the manhole cover at issue in this case was in need of repair, particularly given that approximately three to four inches of the casting was exposed due to the fact that the asphalt surrounding the manhole cover had not been properly maintained.

{¶19} It follows that the trial court correctly denied the City's motion for summary judgment. A reasonable trier of fact could conclude that the damaged manhole cover and adjoining pothole constituted the type of hazard that the City is responsible to repair pursuant to R.C. 723.01 and R.C. 2744.02(B)(3). It would be reasonable to conclude that the hazard

presented a danger to motorists, and even a cursory review of Rhodes Ave. would have revealed that the manhole cover and pothole were in need of immediate attention. The contorted nature of the hazard suggests it did not come into being overnight. While it is unclear exactly how long the hazard existed, the City had reason to believe that Rhodes Ave. was a problematic area given the other reports it had received in the weeks and months leading up to Davis' August 2011 accident. Viewing the evidence in the light most favorable to Davis, we conclude that the trial court correctly determined that there are genuine issues of material fact regarding whether the City had actual or constructive notice of the hazard.

{¶20} The City's assignment of error is overruled.

### III.

{¶21} The City's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

LLOYD PIERRE-LOUIS, Attorney at Law, for Appellant.

CHERI B. CUNNINGHAM, Law Director, and JOHN CHRISTOPHER REECE, Assistant Law Director, for Appellee.