[Cite as *Baab v. Medina City Schools Bd. of Edn.*, 2019-Ohio-510.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| RICHARD BAAB | | C.A. No. 28969 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MEDINA CITY SCHOOLS BOARD OF EDUCATION, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No. CV-2016-03-1436 |
| Appellants | | |

DECISION AND JOURNAL ENTRY

Dated: February 13, 2019

HENSAL, Judge.

{¶1} Julia Schwendeman appeals a judgment of the Summit County Court of Common Pleas that denied her motion for summary judgment on the issue of immunity. For the following reasons, this Court affirms.

I.

{¶2} Ms. Schwendeman is a guidance counselor at a middle school in the Medina City School District. According to her, in early September 2012, she received a request to check on D.B., an eighth grader, regarding scratching. Because she was at home at the time, she contacted D.B.'s teacher and asked him to check on D.B.. The teacher replied that D.B. did not have any scratches on his arms. A week or two later, some girls at the school told her that they were concerned that D.B. might be cutting or scratching himself because of a relationship problem. They also told her that D.B. had said that his father had abused him over the summer. Ms.

Schwendeman reported the information to the assistant principal and D.B.'s teacher. She also talked to D.B., but he denied that his father had abused him and said that he felt safe at home.

{¶3} According to Ms. Schwendeman, a few weeks later the girls repeated their concerns about D.B.'s scratching and showed her pictures of it from their cell phones. Ms. Schwendeman met with D.B. and spoke to him about everything that had transpired, including his relationship with his father, counseling, and cutting. She also called D.B.'s father and recommended that he take D.B. to counseling, telling him that D.B. had indicated that he was interested in attending. She told D.B.'s father that she had even called a local agency, but that it would not set up an appointment for D.B. without talking to him first.

{¶4} On October 31, 2012, the same girls told Ms. Schwendeman that D.B. had engaged in more scratching and had threatened to kill himself. She called D.B.'s father, who immediately came into the school for a meeting with her and D.B.'s teacher. Following the meeting, D.B.'s father took D.B. to the hospital, but doctors concluded that D.B. was not suicidal. The next day, Ms. Schwendeman called D.B.'s father to see what had happened at the hospital. According to Ms. Schwendeman, D.B.'s father told her that the hospital had released D.B., that doctors had recommended that he seek counseling for D.B. or enroll him in its partial-hospitalization program. D.B. had opposed going into the partial-hospitalization program because he would miss his friends. Ms. Schwendeman agreed that it might do more harm than good if D.B. did not want to go. According to D.B.'s father, he told Ms. Schwendeman during the call that "no matter what happens to [D.B.], no matter what you hear or anything, all things [D.B.], I want to know, because he's going to [the hospital] and he's staying the next time anything happens."

{¶5}  On November 16, 2012, Ms. Schwendeman received a call from the mother of one of D.B.'s friends.  According to the mother, her son had come to her upset because D.B. kept sending him text messages that he was going to kill himself.  The mother initially thought to call D.B.'s father, but her son dissuaded her because of D.B.'s fear of his father.  She, therefore, called D.B. instead, in an attempt to see if he was in imminent danger.  She asked D.B. about his threats of self-harm and also invited him over to a party the following week, attempting to give him something to look forward to.  The mother testified that she later spoke with Ms. Schwendeman over the telephone and explained her entire conversation with D.B. to Ms. Schwendeman.

{¶6}  After speaking with the mother of D.B.'s friend, Ms. Schwendeman did not report her phone call to anyone, did not meet with D.B., and did not conduct an assessment of D.B.'s suicide risk.  She also did not contact D.B.'s father.  A couple of days later, D.B. committed suicide.

{¶7}  D.B.'s father, individually and as the administrator of D.B.'s estate, sued Ms. Schwendeman, the Medina City School District, and the Medina City School District Board of Education for wrongful death, failure to report child abuse, and respondeat superior.  Ms. Schwendeman, the Board, and the District moved for summary judgment, alleging that they were immune from liability under Revised Code Chapter 2744.  The trial court granted summary judgment to the District because it concluded that the District was not an entity capable of being sued.  It granted summary judgment to the Board because it concluded that the Board was immune under Section 2744.02.  It granted summary judgment to Ms. Schwendeman on D.B.'s father's failure to report child abuse claim.  It denied her summary judgment, however, on his wrongful death claim because it found that there was a genuine issue of material fact whether her

actions were reckless under Section 2744.03(A)(6)(b). Ms. Schwendeman has appealed, assigning as error that the trial court incorrectly denied her immunity on all of D.B.'s father's claims.

## II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED IMMUNITY TO SCHWENDEMAN PURSUANT TO R.C. 2744.03(A)(6) ON THE WRONGFUL DEATH AND SURVIVORSHIP CLAIMS.

**{¶8}** Ms. Schwendeman argues that the trial court incorrectly concluded that she does not have statutory immunity from all of D.B.'s father's claims, leading it to deny her motion for summary judgment in part. Under Civil Rule 56(C), summary judgment is appropriate if:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

**{¶9}** Under Section 2744.03(A)(6), a political subdivision employee is immune from liability unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were

with malicious purpose, in bad faith, or in a wanton or reckless manner;" or "(c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." The trial court concluded that Ms. Schwendeman did not have immunity on all of D.B.'s father's claims because there was a genuine issue regarding whether her conduct was reckless.

{¶10} Ms. Schwendeman argues that the trial court applied an improper definition of reckless, citing *O'Toole v. Deniham*, 118 Ohio St.3d 374, 2008-Ohio-2574, for the correct definition. The Ohio Supreme Court, however, provided its most current pronouncement of the definition of reckless conduct in *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711. In *Anderson*, the Supreme Court explained that the terms "'[w]illful,' 'wanton,' and 'reckless' describe different and distinct degrees of care and are not interchangeable." *Id*. at paragraph one of the syllabus. It held that "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*. at paragraph four of the syllabus, adopting 2 Restatement of the Law 2d, Torts, Section 500 (1965). It also explained that, in order for the "violation of a statute, ordinance, or departmental policy enacted for the safety of the public" to constitute reckless conduct, there must be "knowledge that the violations will in all probability result in injury." *Id* at ¶ 37, quoting *O'Toole* at ¶ 92; *See* 2 Restatement of the Law 2d, Torts, Section 500, Comment e (1965) ("[A] statute must not only be intentionally violated, but the precautions required must be such that their omission will be recognized as involving a high degree of probability that serious harm will result.").

{¶11} Ms. Schwendeman argues that the trial court failed to distinguish between negligent and reckless conduct in its analysis. She argues that, although the court concluded that a reasonable person in her situation would recognize that failure to act *could* result in D.B.'s

death, it is not the same as concluding that the risk D.B. would kill himself was substantially greater than that which would make her failure to act negligent.

{¶12} In discussing the issue of recklessness, the trial court began with its conclusion that, "[w]hen viewing the facts in the light most favorable to [D.B.'s father], * * * a reasonable juror could find [Ms.] Schwendeman's actions were reckless." It then elaborated on its decision. It noted that Ms. Schwendeman was aware that D.B. had made statements that suggested he was suicidal. It noted that D.B.'s father had told Ms. Schwendeman that he had taken D.B. to the hospital because of D.B.'s statements and advised her that, if anything more occurred, he would take D.B. back to the hospital. It determined that a reasonable person in Ms. Schwendeman's situation "would recognize that [a] failure to act or report additional incidents could result in D.B.'s death." The court then noted that, despite this knowledge, Ms. Schwendeman did not report the information she received from D.B.'s friend's mother to D.B.'s father. It explained that, if a jury found all of those facts, they "could support a determination of conscious disregard for a known or obvious risk." Noting that it could not weigh the evidence or choose among reasonable inferences at that stage of the litigation, the court explained that the issue of recklessness had to be determined by a jury.

{¶13} Upon review of the trial court's decision, we note that it did not specifically address whether Ms. Schwendeman's "conscious disregard of or indifference" to the risk that D.B. would kill himself was "unreasonable" and "substantially greater than negligent conduct." *Id*. at paragraph four of the syllabus. A trial court, however, is not required to provide its reason for denying summary judgment arguments. *Jascar Ents., LLC v. Body by Jake Ents., LLC*, 9th Dist. Wayne No. 14AP0006, 2015-Ohio-3281, ¶ 10, citing Civ.R. 52. *But see Mourton v. Finn*, 9th Dist. Summit No. 26100, 2012-Ohio-3341, ¶ 8-9 (explaining that, in complex cases, the court

must give some indication as to what it actually decided so that we may properly function as a reviewing court). We cannot conclude that the court committed reversible error just because it failed to explain each part of its recklessness analysis.

{¶14} Ms. Schwendeman next argues that the trial court erred because it based its conclusion on the risks that a reasonable person would have recognized instead of her. As previously noted, in defining reckless conduct, the Ohio Supreme Court adopted the definition found in Section 500 of the Restatement. *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraph four of the syllabus. The comments to Section 500 explain that recklessness "may consist of either of two different types of conduct." 2 Restatement of the Law 2d, Torts, Section 500, Comment a (1965).

> In one the actor knows, or has reason to know * * * of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it.

*Id.* Thus, the trial court did not err when it considered the risks that a reasonable person in Ms. Schwendeman's situation would have recognized.

{¶15} Ms. Schwendeman next argues that, because her duty to act could only have come from a school policy, she can only be found reckless if she knew that her violation of the policy would "in all probability result in injury[.]" *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at ¶ 38. We note that, in his complaint, D.B.'s father alleged that Ms. Schwendeman "had a duty to use due care in handling D.B." He did not allege that the duty arose exclusively from school policy. Ms. Schwendeman also did not argue in her motion for summary judgment that any duty she owed to D.B. arose exclusively from school policy. Upon review of the record, we conclude

that questions about the source of Ms. Schwendeman's duty to D.B. are beyond the scope of this limited immunity appeal. *See Davis v. City of Akron*, 9th Dist. Summit No. 27014, 2014-Ohio-2511, ¶ 13-14. We, therefore, decline to address Ms. Schwendeman's argument.

{¶16} Ms. Schwendeman also argues that the trial court improperly conflated the objective and subjective aspects of recklessness. Although acknowledging an objective part of the test, she argues that she, herself, had to be conscious that her conduct would, in all probability, result in injury to D.B. As previously explained, however, one of the Restatement's recklessness tests is entirely objective in nature. Under that test, Ms. Schwendeman may be found reckless if a reasonable person in her position would have "realize[d] or appreciate[d] the high degree of risk involved" in acting or failing to act. 2 Restatement of the Law 2d, Torts, Section 500, Comment a (1965). The trial court, therefore, did not err when it denied Ms. Schwendeman's motion for summary judgment in part because it concluded that a reasonable juror could find that "[a] reasonable person under this fact pattern would recognize that failure to act or report additional incidents could result in D.B.'s death."

{¶17} Ms. Schwendeman next argues that the trial court failed to consider all of the efforts that she made to aid D.B. and improperly focused on her single failure of not telling D.B.'s father about the call from his friend's mother. She notes that, when she first heard that D.B. might be scratching himself, she had a colleague check on him. She argues that she met and provided counselling to D.B. numerous times, that she conducted a risk assessment of D.B., that she spoke with his father about her concerns, that she recommended to his father that he go to counseling, and that she followed-up with his father after he went to the hospital. According to Ms. Schwendeman, her actions were not reckless just because they were not perfect.

{¶18}  In support of her argument, Ms. Schwendeman cites *Hackathorn v. Preisse*, 104 Ohio App.3d 768 (9th Dist.1995).  In *Hackathorn*, the students of a vocational class cut a hole through the floor of a woman's dining room as part of a class project.  Although the instructor of the class placed furniture around the hole, the homeowner fell through it.  This Court concluded that the trial court had correctly determined that the instructor was entitled to summary judgment because he was immune from liability.  *Id*. at 772.  Although the instructor failed to comply with building codes, this Court held that he did not create an unnecessary risk of physical harm greater than that necessary to establish negligence because he had warned the woman about the hole, told her that the covering over the hole would not support any weight, and positioned furniture to create a barrier between the hole and the rest of the room.

{¶19}  Unlike in *Hackathorn*, there is evidence in this case that, after D.B.'s father told Ms. Schwendeman that he would have D.B. stay at the hospital the next time anything happened, she failed to take any further action in aid of D.B. despite learning from the friend's mother that he had again indicated his desire to kill himself.  Unlike the instructor in *Hackathorn*, who took precautions to prevent harm from the hole in the floor, Ms. Schwendeman did not report the call from the friend's mother to D.B.'s father or other school district personnel, did not meet with D.B. or attempt to schedule a meeting with him, and did not do an evaluation of D.B.'s risk of suicide.  We note that the trial court accurately recounted Ms. Schwendeman's concern for D.B. when she first learned about his scratching and cutting behavior, and the efforts she made to assist him up until the time D.B.'s father took him to the hospital in its decision.  Upon review of the record, we cannot say that the trial court ignored Ms. Schwendeman's initial efforts to help D.B. or concluded that there was a genuine issue as to whether her conduct was reckless because her actions were not perfect.

{¶20} Ms. Schwendeman next argues that the trial court misapplied the undisputed facts when it evaluated her immunity argument. She first argues that the court disregarded her knowledge that the doctors at the hospital had determined that D.B. was not suicidal when it cited her knowledge of his past threats of self-harm to conclude that a jury might find her actions reckless. According to Ms. Schwendeman, the fact that the hospital concluded that D.B. was not suicidal, despite his threats of self-harm, means that she could not be considered reckless for failing to act on what D.B. said to his friend's mother. She argues that D.B. did not even specifically tell his friend's mother that he was going to hurt himself and that the mother did not view the situation as an emergency.

{¶21} Second, Ms. Schwendeman argues that, to the extent the trial court considered the times when she did or did not complete an assessment of the risk that D.B. would engage in self-harm, it failed to take into account how the concerns about D.B. changed over time. According to Ms. Schwendeman, under school policy, she is only required to complete an assessment if a student threatens or attempts to commit suicide, not for scratching and cutting behaviors. Third, Ms. Schwendeman argues that the trial court ignored the fact that D.B.'s text messages to his friend and conversation with the friend's mother did not constitute a new incident of threatened self-harm, but was simply a new source relaying the same old threat. She further argues that, even if they could be construed as a new threat, it was insufficient to make her believe that her failure to tell D.B.'s father about the threat would cause D.B., in all likelihood, to kill himself.

{¶22} We note that the trial court was required to view the evidence in a light most favorable to D.B.'s father. Accordingly, we cannot say that Ms. Schwendeman could assume D.B. was not suicidal on November 16 because he was not suicidal two weeks earlier at the hospital. Regarding risk assessments, we note that the trial court did not mention the fact that

Ms. Schwendeman did not complete a risk assessment after speaking to the mother of D.B.'s friend in its analysis of the recklessness issue. Accordingly, we cannot say that the court misapplied the facts as to the risk assessments. Finally, according to the mother of D.B.'s friend, when she called D.B., she asked him whether he wanted to kill himself, and part of his answer was "I want to." She also testified that, when she talked with Ms. Schwendeman, she told Ms. Schwendeman that D.B. had told her son that D.B. wanted to kill himself the previous night. In light of the fact that the friend's mother said that D.B.'s threat had occurred the "night before[,]" Ms. Schwendeman could not have considered her to be referring to D.B.'s threats from before he went to the hospital. Upon review of the record, we conclude that Ms. Schwendeman has failed to demonstrate that the trial court misapplied undisputed facts.

{¶23} Ms. Schwendeman also argues that the trial court made unreasonable inferences when it concluded that D.B.'s father would have obtained mental health services for D.B. if she had told him about the call from the friend's mother. The record reflects that, the same day that D.B.'s father learned that D.B. was threatening to commit suicide, he came into the school for a meeting. Following the meeting, he took D.B. to the hospital. The next day he told Ms. Schwendeman about the treatment options he was given at the hospital and about D.B.'s reluctance to enroll in the partial-hospitalization program. Immediately, after Ms. Schwendeman told D.B.'s father that it might do more harm than good if he enrolled D.B. in the program when he was unwilling to join it, D.B.'s father told her to let him know if she heard anything more about D.B., because he would take D.B. back to the hospital to stay. In light of D.B.'s father actions to seek help for D.B. when he learned about D.B.'s prior suicide threat, we cannot say that it was unreasonable for the court to infer that D.B.'s father would have obtained care for D.B. if Ms. Schwendeman had notified him that he had made a new threat.

{¶24} Ms. Schwendeman's final argument is that there is no evidence that she "perversely disregarded the known risk that D.B. would kill himself" and "that she was conscious that not telling [D.B.'s father] about [the] phone call would, in all probability, result in D.B. killing himself." That, however, is not the correct test of reckless conduct. *See Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraph four of the syllabus. Ms. Schwendeman repeats her argument that the phone call from D.B.'s friend's mother did not contain any new information, but, as previously noted, the friend's mother relayed a new suicide threat by D.B. to Ms. Schwendeman, which had occurred only the day before. Ms. Schwendeman also repeats her argument that the test for recklessness contains a subjective component, but, as previously explained, whether someone was reckless can be measured against what a reasonable person would have done under similar circumstances. Accordingly, upon review of the record, we conclude that Ms. Schwendeman has failed to establish that the trial court incorrectly denied her motion for summary judgment on the issue of immunity. Ms. Schwendeman's assignment of error is overruled.

III.

{¶25} Ms. Schwendeman's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.


APPEARANCES:

DAVID S. HIRT, KRISTA KEIM, and DAVID K. SMITH, Attorneys at Law, for Appellants.

JOHN BROOKS CAMERON and CHRISTOPHER JANKOWSKI, Attorneys at Law, for Appellee.