[Cite as *Sterling Contracting, L.L.C. v. Main Event Entertainment, L.P.*, 2022-Ohio-2138.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STERLING CONTRACTING, LLC,          :

    Plaintiff-Appellant,          :

v.          :

                No. 110965

MAIN EVENT          :
ENTERTAINMENT, LP, ET AL.,

    Defendants-Appellees.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 23, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-906890

---

### *Appearances:*

Wilson & Wilson Co., L.P.A., Robert D. Wilson, and Michael J. Wilson, *for appellant*.

Franz Ward, LLP, Ian H. Frank, and Allison Taller Reich, *for appellees*.

SEAN C. GALLAGHER, A.J.:

{¶ 1} Sterling Contracting, LLC appeals the grant of summary judgment in favor of Main Event Entertainment, LP, and National Retail Properties, LP. For the following reasons, we affirm.

{¶ 2} There is no dispute over the facts of this case; the sole focus of this appeal is on the application of legal principles to those facts. Main Event leased property located in Avon, Ohio, from National Retail for an initial term of fifteen years, with the right to renew for an additional ten-year term followed by an optional five-year term. Main Event executed a construction contract with Omni Construction Company, Inc., to build a commercial entertainment center on the leased property. In exchange for the sum of $8,681,026, Omni agreed to complete the project in 220 calendar days, starting from July 2017. Through addendums and approved changes during the course of the project, the contract price increased to $9,460,969.42. Under the terms of the agreement, periodic payments were due for completed work and materials, but Main Event had the contractual right to withhold 10 percent of all payments as a "retainage."[1] Main Event's lease agreement with National Retail obligated Main Event to fund and manage the construction project. The two companies, although separate entities, were related enterprises.

---

[1] "Retainage" is the withholding of a portion of the periodic or final payments designed to permit the owner the opportunity to ensure that the contractor or subcontractor has completed the project correctly and is considered a standard practice in the construction industry. *Liberty Excavating, Inc. v. Welty Bldg. Co.*, 9th Dist. Summit No. 21807, 2004-Ohio-4873, ¶ 11; *Gillard v. Green*, 4th Dist. Washington No. 00CA54, 2001-Ohio-2644, 20, fn. 12.

{¶ 3} Omni subcontracted concrete work necessary to the project to Sterling. Sterling's contract was entered solely as between it and Omni. Omni agreed to pay Sterling $745,000 in the initial contract, and $32,978.70 through approved change orders. Omni paid, and Sterling received, $663,255 over the course of the project. Through Main Event's retainage, which Omni withheld from Sterling, and the outstanding balance on the change orders, Omni owed Sterling $114,723.70 after Sterling completed its work. That amount was never paid.

{¶ 4} Disputes between Omni and Main Event arose with respect to the lack of work being performed and delays in the project schedule. Omni walked off the project in the beginning of July 2018, almost a full year after the parties agreed to the 220-day project. After breaching its contract with Main Event, Omni failed to pay several subcontractors.

{¶ 5} Before defaulting under the terms of the construction contract, Main Event paid Omni $7,631,846.12. Between the retainage and the residual for the unpaid portion of the contract, Main Event retained $1,829,123.30 of cash and value. Thirty mechanic's liens were filed by other subcontractors after Omni breached the construction contract and failed to pay the subcontractors for their completed work. In total, Main Event issued payments to resolve the liens in an amount totaling $2,030,244.10, well exceeding the retainage amount. After incurring additional costs related to finalizing the construction project, Main Event's final payments exceeded the construction contract price by $288,256.85.

{¶ 6} Sterling did not file a mechanic's lien. After, or while, Main Event resolved the mechanic's liens filed against the lessee's interest in the property, Sterling initiated a breach of contract action against Omni and included equitable claims against Main Event and National Retail for unjust enrichment based on the work Sterling performed for Omni. Omni predictably defaulted in answer, and Sterling obtained a judgment in its favor against Omni for the $114,723.70 balance owed under Sterling and Omni's contract.

{¶ 7} Nothing in the record directly demonstrates Omni's inability to satisfy the judgment. According to Sterling, the inability to satisfy the judgment is demonstrated by the fact that the sole owner of Omni, Richard Stone, filed a personal bankruptcy action in federal court. In that petition, Stone alleged himself to be the sole owner of Omni, which had no monetary value. Sterling, Main Event, and National Retail were listed as unsecured creditors by Stone. We have no other information regarding Stone's personal bankruptcy action that impacts Omni's solvency.

{¶ 8} In the trial court proceedings, Sterling, Main Event, and National Retail all agreed the matter could be resolved under Civ.R. 56. Both sides filed motions for summary judgment claiming that application of equitable legal principles to the undisputed facts necessitated judgment in their respective favor. Sterling claimed entitlement to compensation based on the benefit conferred upon Main Event, and the defendants claimed that the benefit had not been unjustly retained in light of the expenditures necessary to complete Omni's work and the

exhaustion of the retainage funds. The trial court ultimately agreed with Main Event and National Retail and granted judgment in their favor upon all claims. Sterling's judgment against Omni was not affected by that decision. This appeal timely followed.

{¶ 9} Summary judgment rulings are reviewed de novo, and appellate courts apply the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Review of summary judgment is governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and [3] viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12. Appellate courts provide no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶ 10} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that establish his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the

existence of a genuine issue of material fact for trial. *Id.* at 293. If the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.*

{¶ 11} In the first assignment of error, Sterling claims the trial court erred in failing to provide a reason for its decision and that without a reason for the decision, this court is incapable of providing a "meaningful" review under Civ.R. 56. According to Sterling, an argument based on a panel decision from the Ninth District, "if a trial court does not set forth any analysis, the parties may just as well file their summary judgment motions in this Court" in the first instance, and because of that, the matter should be remanded for the trial court to issue reasons for its decision to enable appellate review. *Mourton v. Finn*, 9th Dist. Summit No. 26100, 2012-Ohio-3341, ¶ 9.

{¶ 12} With due respect to, and after consideration of, the nonbinding conclusion reached by the panel in *Mourton*, there is no need for a remand in this case. Appellate review of a summary judgment under Civ.R. 56 is de novo and requires this court to perform the analysis without any deference to the decision reached or reasoning offered by the trial court. It is as if the motion and evidence therein *is* first reviewed at the appellate level. *Grafton*, 77 Ohio St.3d 102, at 105, 671 N.E.2d 241; *Argabrite*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, at ¶ 14. There is no requirement under Civ.R. 56 that a trial court provide reasons for its decision. *Medina ex rel. Jocke v. Medina*, 9th Dist. Medina No. 20CA0044-M, 2021-Ohio-4353, ¶ 22, citing *Copeland v. Rosario*, 9th Dist. Summit No. 18452, 1998 Ohio App. LEXIS 260 (Jan. 28, 1998). Similarly, since a motion for summary

judgment does not involve factfinding, there is no requirement for findings of fact under Civ.R. 52. *Baab v. Medina City Schools Bd. of Edn.*, 2019-Ohio-510, 130 N.E.3d 1106, ¶ 13 (9th Dist.); *Jascar Ents., LLC v. Body by Jake Ents., LLC*, 2015-Ohio-3281, 40 N.E.3d 689, ¶ 10 (9th Dist.).

{¶ 13} "Meaningful" appellate review occurs through resolution of the appellate arguments based on the applicable standard. Appellate review of a summary judgment necessarily requires the panel to "consider the evidence as if for the first time." *Argabrite* at ¶ 14. The fact that the trial court issued a more generalized decision granting summary judgment in favor of Main Event and National Retail does not impede our review. *United States Bank Natl. Assn. v. Franko*, 2018-Ohio-687, 107 N.E.3d 142, ¶ 10 (8th Dist.). The trial court's decision, even if reasons for it were offered in the record, cannot be considered persuasive, much less dispositive, since we provide the trial court's decision no deference. The first assignment of error is overruled.

{¶ 14} In the second and third assignments of error, Sterling claims the trial court erred in granting summary judgment in favor of Main Event and National Retail because Sterling demonstrated that Main Event or National Retail was unjustly enriched by Sterling's work, the payment for which was Omni's sole obligation.

{¶ 15} Sterling was a subcontractor hired by Omni to complete work for the lessee, Main Event. Omni maintained the only contractual obligation to pay Sterling. "When some event occurs in which the general contractor cannot or will

not pay, a lack of contractual privity between the subcontractor and the property owner usually will prevent the former from suing the latter for breach of contract." *Booher Carpet Sales v. Erickson*, 2d Dist. Greene No. 98-CA-0007, 1998 Ohio App. LEXIS 4643, 16-17 (Oct. 2, 1998).

{¶ 16} It has been concluded, however, that "[w]hen a subcontractor is not paid by the contractor and the owner has not paid the contractor for some aspect of the job at issue, the subcontractor can look to the owner for payment under a theory of unjust enrichment" for the funds or value retained under the unsatisfied contract price. *Moosehead Harvesting, Inc. v. Eureka Midstream, LLC*, 7th Dist. Monroe No. 18 MO 0015, 2019-Ohio-3961, ¶ 13, citing *Meridien Marketing Group, Inc. v. J & E Bldg. Group, Inc.*, 2d Dist. Miami No. 2011-CA-02, 2011-Ohio-4872, ¶ 30, *Ross-Co Redi Mix Co. v. Steveco, Inc.*, 4th Dist. Pickaway No. 95CA3, 1996 Ohio App. LEXIS 437 (Feb. 6, 1996), and *Brower Prods. Inc. v. Musilli*, 2d Dist. Miami Nos. 98CA58 and 98CA59, 1999 Ohio App. LEXIS 2283 (May 21, 1999). Under this theory, before a subcontractor can pursue an unjust enrichment claim, it must be established that the general contractor is "'unavailable for judgment *and* unable to pursue the owner for the money that the subcontractor is seeking.'" (Emphasis added.) *BFI Waste Sys. of Ohio v. Professional Constr. & Safety Servs.*, 9th Dist. Lorain No. 06CA008972, 2008-Ohio-1450, ¶ 7, quoting *Booher Carpet Sales* at 17, "'[A]n unjust enrichment claim will not lie where the possibility exists that either the subcontractor could make a double recovery or the [owner] could pay twice for the same performance.'" *Id.*

{¶ 17} In this case, Sterling not only pursued a claim against Omni for breach of contract, but it also obtained a judgment for the full value of the outstanding debt, necessarily meaning that the claim against Omni has not been discharged in bankruptcy; otherwise, the automatic stay under federal law would have precluded the judgment. *Schelling v. Humphrey*, 123 Ohio St.3d 387, 2009-Ohio-4175, 916 N.E.2d 1029, ¶ 8. This fact belies Sterling's claim that Omni has ceased to exist and is incapable of satisfying its debt based on the allegations contained within Stone's personal bankruptcy proceeding. Sterling's judgment against Omni has not been extinguished, and as a result, it cannot be concluded that no possibility exists that Sterling could obtain a double recovery. *Columbus Garage Floor Coating LLC v. Iowa Concrete, LLC*, S.D.Ohio No. 2:21-cv-3851, 2022 U.S. Dist. LEXIS 33127, 10 (Feb. 25, 2022), quoting *Carter-Jones Lumber Co. v. Oro RB SPE Owner, LLC*, No. 2:19-CV-5087, 2021 U.S. Dist. LEXIS 117835, 6 (S.D. Ohio June 24, 2021), and *E.S. Wagner Co. v. Plant Process Equip. Inc.*, No. 3:19 CV 1759, 2021 U.S. Dist. LEXIS 61891, 2021 WL 1214821, *3 (N.D. Ohio Mar. 31, 2021) ("Ohio law requires that before a subcontractor can pursue an unjust enrichment claim against a property owner, it must establish that the general contractor is unavailable for judgment[.]"). "A general contractor which is not bankrupt and which has been named as a party to the subcontractor's lawsuit is deemed available for judgment" extinguishing any unjust enrichment claim against the owner or lessee in possession of the property. *Id.*, citing *Coyne v. Hodge Constr. Inc.*, 9th Dist. Medina No. 03CA0061, 2004-Ohio-727, ¶ 5. No unjust enrichment claim can be maintained

against either Main Event or National Retail with Sterling's judgment against Omni outstanding. *Coyne*.

{¶ 18} Beyond that conclusion, equity does not lie in Sterling's favor in this case. "[U]njust enrichment is an equitable claim that applies when one retains a benefit that 'in justice and equity belong[s] to another' and that restitution is afforded as a remedy 'to prevent one from retaining [a benefit] to which he is not justly entitled.'" *State Farm Mut. Auto. Ins. Co. v. Balcer Performance & Restoration*, 8th Dist. Cuyahoga No. 106768, 2018-Ohio-4868, ¶ 16, quoting *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938), and *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254, 256, 141 N.E.2d 465 (1957). "[T]he purpose of such claims 'is not to compensate the plaintiff for any loss or damage suffered by him *but to compensate him for the benefit he has conferred on the defendant*.'" (Emphasis added.) *Johnson* at ¶ 21, quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954). "The goal of equitable relief is not to punish * * *." *Sun Prairie v. Cason*, D.S.D. No. 3:02-CV-03030-RAL, 2016 U.S. Dist. LEXIS 86349, 16 (July 1, 2016), quoting *Graves v. Romney*, 502 F.2d 1062, 1064-1065 (8th Cir.1974).

{¶ 19} In order to demonstrate a claim for unjust enrichment, it must be proven that (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant retained that benefit under circumstances in which it would be unjust to do so without payment.

*Johnson* at ¶ 20, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465

N.E.2d 1298 (1984). Although Sterling seeks to be paid its contract price under the

unjust enrichment theory, it is not entitled to the full contractual price. *Moosehead*

*Harvesting,* 7th Dist. Monroe No. 18 MO 0015, 2019-Ohio-3961, at ¶ 15. Sterling is

only entitled to seek an amount by which Main Event and National Retail has been

unjustly enriched. *Id.* Our focus, therefore, is on the third element in this case:

whether Main Event or National Retail's retention of the benefit would be unjust

without payment to Sterling.

{¶ 20} Unjust enrichment claims are born from well-recognized equitable

principles:

> [w]hile it is a rule that the law on fundamental principles of justice will
> not permit one person to enrich himself or herself unjustly at the
> expense of another, the statement of the rule discloses its limitations.
> *There must be an unjust enrichment to justify a recovery* under the
> rule. It is not sufficient for the plaintiff to show that he or she has
> conferred a benefit on the defendant; *the plaintiff must go further and
> show that, under the circumstances, he or she has a superior equity so
> that, as against him or her, it would be unconscionable for the
> defendant to retain the benefit.* The complaining party must ordinarily
> show not only loss on one side but also gain on the other, with a tie of
> causation between them.

(Emphasis added.) 18 Ohio Jurisprudence, Contracts, Section 279; *Epstein v.*

*Epstein*, 915 So.2d 1272, 1275 (Fla.App.2005), quoting *Schetter v. Schetter*, 279

So.2d 58, 61 (Fla. 4th DCA 1973) (Walden, J., dissenting) ("Equity is a court of

conscience; it demands fair dealing in all who seek relief, and requires decency, good

faith, fairness, and justice. Equity cannot be invoked for selfish or ulterior

purposes."). Thus, we begin the analysis under the notion that one cannot seek

equitable relief at the expense of another, but instead must demonstrate a superior equity entitling that party to relief.

{¶ 21} It is for this reason that courts deny equitable relief to subcontractors as brought against property owners or those in possession of the property who have fully paid the general contractor for the services rendered under the terms of the original construction contract. *Meridien Marketing Group* at ¶ 30. The property owner's liability under a theory of unjust enrichment is limited to the extent of the unpaid contract price because it is that amount that the owner would be unjustly enriched if they otherwise retained the full benefit of the work performed. In other words, an owner or possessor of property cannot retain a benefit of work performed if they received a windfall through the general contractor's breach by paying less than the contracted price after obtaining the benefit of the work completed by the subcontractor. *Booher Carpet Sales*, 2d Dist. Greene No. 98-CA-0007, 1998 Ohio App. LEXIS 4643, at 18-19. This same concept has been applied to residential and commercial construction contracts. *Meridien Marketing Group* at ¶ 30 (collecting cases).

{¶ 22} Sterling seeks to distinguish its situation from the general prohibition against restitution because Main Event retained nearly $2 million between the retainage and the value of the unpaid contract price at the time Omni breached, without consideration of subsequent events. Sterling claims that Main Event's payments to release the mechanic's liens to the numerous other unpaid subcontractors and expenditures to finalize the project should not impact Sterling's

claim for unjust enrichment, citing *Wickford Metal Prods. v. Tri-Village Church of Christ*, 5th Dist. Licking No. 98CA47, 1998 Ohio App. LEXIS 6499, 1 (Dec. 1, 1998). In *Wickford,* even though the property owner paid more to third parties to complete the project after the general contractor breached its contracts with the owner and a subcontractor through nonpayment, the panel concluded that the equitable award in favor of the subcontractor against the property owner was justified because the owner did not specifically pay the general contractor a portion of the periodic payment. *Id. Wickford* is unpersuasive in light of the cursory analysis provided therein, focusing on whether a subcontractor retained the right to pursue an unjust enrichment action against the property owner. *Id.* at 7-8, *see, e.g., Moosehead Harvesting* at ¶ 21 (retainage must be applied to settle liens resulting from the contractor's failure to pay subcontractors, and the retainage cannot be withheld as compensation to the owner for additional services).

{¶ 23} We cannot award Sterling its requested relief because it cannot demonstrate a superior equity such that it would be unconscionable for Main Event to retain the benefit of the work performed by Sterling. We find no equitable reason to permit an aggrieved subcontractor to obtain restitution from the owner or lessee who paid more than the contractual price to complete a project after the general contractor breached its independent obligations to both parties, especially after that owner or lessee has exhausted the retainage funds following the breach to satisfy debts owed by the general contractor. In this situation, no benefit was unjustly retained beyond the benefit originally contemplated under the terms of the

construction contract; an amount equal or greater to the value of the contract under which the benefit was created was ultimately paid for the benefit received. *Black Bear Energy Servs. v. Youngstown Pipe & Steel, LLC*, W.D.Pa. Civil Action No. 15-50, 2020 U.S. Dist. LEXIS 46633, 74, fn. 27 (Mar. 18, 2020) (unjust enrichment cannot be demonstrated when the party receives the original benefit of the contract at the original contract price since no benefit was received beyond the original contract terms). This situation is not conceptually distinct from that in which the owner directly pays the general contractor in full, who in turn breaches its obligation to remit the final payment to a subcontractor.

{¶ 24} In this case, the retainage funds were exhausted on the outstanding debts in order to remove the mechanic's liens filed against the property by other subcontractors, distinguishing this case from *Moosehead Harvesting, Inc.* Main Event did not attempt to use the retainage to compensate itself for the troubles caused by the general contractor's breach, but applied those funds to extinguish Omni's outstanding debts — the primary purpose of the retainage. Omni's debts were simply too large and exceeded the amount held back. Thus, the only remaining equitable consideration focuses on the unpaid contractual price as between Main Event and Omni. But there, too, Main Event's expenditures to complete the project exceeded the unpaid portion of the construction contract.

{¶ 25} It is without question that both Main Event and Sterling were harmed by Omni's breaches. While it is true that Main Event benefitted to some degree by the work for which Sterling was unpaid, that alone is insufficient to warrant an

equitable judgment against Main Event in Sterling's favor. *EBC, Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 273 (3d Cir.2010), citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 2001 PA Super 325, 787 A.2d 988, 991 (Pa. Super. Ct. 2001). Main Event is not unjustly or unconscionably retaining that benefit because it paid more than the value of the contract with Omni to complete the project. Just as much as Sterling is entitled to the benefit of its bargain with Omni (in receiving full payment for its work), so, too, is Main Event (in obtaining the entertainment center at the agreed-upon price). In simplistic terms, forcing Main Event to pay another $114,723.70 to Sterling would make Sterling whole upon Omni's obligation, but solely at Main Event's expense, in effect punishing Main Event for a wrong it did not commit.

{¶ 26} Equitable principles do not permit that course of action. As the situation stands, both Sterling and Main Event have suffered economic losses from Omni's contractual misdeeds. Sterling was harmed in an amount totaling nearly $115,000 for unpaid services and materials, and Main Event was harmed in an amount totaling nearly $300,000 in finishing the construction project and removing the mechanic's liens filed against its interests. Equitable principles do not permit courts to favor one party over another. Sterling's claim for unjust enrichment cannot be sustained. Based on the undisputed evidence, the trial court properly entered judgment in Main Event's favor upon Sterling's claims.

{¶ 27} Turning to Sterling's claims against National Retail, we cannot conclude that National Retail has even retained a benefit as a matter of law. Main Event procured the lease agreement before the improvements were made to the

property for its benefit and at its expense. Simply because a tenant undertakes a commercial construction project necessary to its operations does not necessarily mean that the landowner out of possession has been enriched by the improvements that are specific to the tenant's needs. *Guardian Technology, Inc. v. Chelm Properties, Inc.*, 8th Dist. Cuyahoga No. 80166, 2002-Ohio-4893, ¶ 37-42 (the improvements to the leased building were specific to the tenant's needs and thus did not benefit the landlord*); Qwest Communications Corp. v. Free Conferencing Corp.*, D.S.D. No. CIV. 07-4147, 2014 U.S. Dist. LEXIS 157972, 46 (Nov. 6, 2014) ("The fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched."), citing Restatement (Third) of Restitution and Unjust Enrichment Section 2(1). In this case, Sterling has not presented any evidence, much less undisputed evidence, that National Retail was unjustly enriched by Main Event's construction project. Sterling solely relies on the argument that National Retail benefitted through the construction of the building, but that fact alone is insufficient to sustain an unjust enrichment claim; not only must Sterling demonstrate the existence of a benefit but that the benefit was unjustly retained.

{¶ 28} Even if we presumed that National Retail was conferred a benefit, however, the general rule in Ohio is that "third-persons, even if benefitted by the work, cannot be sued on an implied contract or on unjust enrichment to pay for the benefit, because an implied contract does not arise against the one benefitted by virtue of a special contract with other persons." *Nationwide Heating & Cooling, Inc.*

*v. K & C Constr.* and *Frankie J's, Inc.*, 10th Dist. Franklin No. 87AP-129, 1987 Ohio App. LEXIS 8681, 4 (Sept. 10, 1987), citing 66 American Jurisprudence 2d, Restitution, Section 60. There are exceptions; however, those exceptions occur in situations in which there is an underlying contractual relationship between the party receiving the benefit and the party who contracted for the benefit. In *Kazmier v. Thom*, 63 Ohio App.2d 29, 408 N.E.2d 694 (6th Dist.1978), for example, a lease agreement required the lessee to install a fence, and the lessee entered a contract with the plaintiff to complete the work, in essence acting as the landlord's agent. *Nationwide Heating & Cooling* at 4. The lessee failed to pay; the plaintiff sued the lessee and the lessor. The court denied summary judgment finding genuine issues of material fact as to whether the lessor held himself out as a partner of the lessee for the purposes of establishing equitable liability. *Id.*, *see also Andy's Glass Shops v. Leelanau Realty*, 50 Ohio App.2d 355, 363 N.E.2d 601 (1st Dist.1977); *Guardian Technology*. Thus, it has been concluded that if the lessee and the lessor are partners with respect to the work performed, equitable relief may lie against the lessor under a derivative liability theory.

{¶ 29} In this respect, Sterling's claim against National Retail, although arguably viable as a claim, must also fail. Even if Main Event is an agent of National Retail with respect to the construction project, in that the lease agreement required Main Event to undertake and fund the specific construction project in association with National Retail's interests, equitable principles do not establish Sterling's right to recover restitution from Main Event. Sterling cannot circumvent those equitable

principles by seeking payment from the landlord out of possession of the property who at best shares an agency relationship with the lessee under *Kazmier* or *Nationwide Heating & Cooling*. As with all derivative liability cases, if liability cannot be maintained against the agent, no claims can be maintained against the principal either. *See, e.g., Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 22 (in order for a master to be held liable for the acts of the agent, the agent must be liable themselves). Main Event has not wrongfully withheld payment to Sterling, such as was the case in *Nationwide Heating & Cooling* or *Kazmier*. Main Event is not obligated under legal or equitable principles to make Sterling whole on Omni's behalf because Main Event did not unjustly retain the benefit, which equally applies on behalf of its "partner" National Retail.

{¶ 30} Sterling has not demonstrated the inapplicability of the general rule that a third party cannot be held liable for unjust enrichment. As a result, we cannot conclude that the trial court erred in granting judgment in National Retail's favor upon all claims.[2]

{¶ 31} The second and third assignments of error are overruled.

{¶ 32} Having overruled the errors as assigned, we affirm the judgment of the trial court.

---

[2] In the fourth assignment of error, Sterling claims the trial court erred by denying its motion for reconsideration regarding Sterling's motion for summary judgment upon its claims against National Retail. Having affirmed the trial court's decision in National Retail's favor upon all claims, the fourth assignment of error is overruled as moot.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR