[Cite as *Almasoodi v. J. Harris Constr. Inc.*, 2023-Ohio-895.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| HASSAN ALMASOODI, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellees | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 22 CAE 06 0053 |
| | : | |
| J. HARRIS CONSTRUCTION INC., ET | : | |
| AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Delaware County Court of Common Pleas, Case No. 21 CVC 010002 |
| | |
| JUDGMENT: | AFFIRMED |
| | |
| DATE OF JUDGMENT ENTRY: | March 21, 2023 |

APPEARANCES:

For Plaintiffs-Appellees:

JEFFREY M. LEWIS
HALEY K. LEWIS
1650 Lake Shore Dr., #150
Columbus, OH 43204

For Appellant Villarreal:

TERESA VILLARREAL
184 N. Wilson Rd.
Columbus, OH 43204

*Delaney, J.*

{¶1} Appellant Teresa Villarreal appeals the June 27, 2022 judgment entry of the Delaware County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Home Improvement Contract between Almasoodi and Siravo Construction

{¶2} On April 29, 2020, Plaintiffs-Appellees Hassan Almasoodi, Kathryn Medeiros, and Lydia Medeiros (hereinafter "Almasoodi") entered into a home improvement contract with Siravo Construction, LLC. The contract between Almasoodi and Siravo was for the construction of a driveway at the Almasoodi's residential property. The contract amount was $17,450, and on April 29, 2020, Almasoodi paid Siravo a downpayment of $6,975.

{¶3} During the construction project, Robert Twyman, the alleged agent of Siravo, hired Defendants John Harris and J Harris Construction, Inc. (hereinafter "Harris") to serve as a subcontractor on the project.

{¶4} Siravo completed the construction project on or about June 16, 2020. Upon completion of the project, Almasoodi paid Siravo $10,475, the balance of the contact amount, on June 17, 2020.

### Harris Records a Mechanic's Lien

{¶5} On August 24, 2020, Harris recorded a mechanic's lien against Almasoodi's residential property, alleging that Siravo did not pay Harris an outstanding balance in the amount of $7,035.63 for Harris' work on the construction project. The mechanic's lien represented that Harris last furnished services for the construction project on July 16,

2020. Harris attached an invoice to the mechanic's lien, which was an invoice dated June 17, 2020, from Harris to Robert Twyman in the amount of $7,035.63.

{¶6} When the mechanic's lien was served on Almasoodi, his legal counsel contacted Appellant Teresa Villarreal, counsel for Harris, regarding the mechanic's lien. Almasoodi notified Harris that he had paid Siravo in full on June 17, 2020, the date of the project completion. He demanded that Harris release the lien based on full payment. Almasoodi sent Harris a second demand to release the lien on November 12, 2020 and a third demand to release the lien on November 19, 2020. Villarreal emailed Almasoodi's counsel on November 20, 2020, stating that Harris understood he must release the lien and requested Almasoodi's counsel draft a release for Harris to sign. Almasoodi emailed the release to Villarreal on November 30, 2020. Villarreal responded on December 4, 2020, asking for more information before Harris would sign the release.

**The Lien Remains and the Court Proceedings Begin**

{¶7} When Harris failed to release the lien, Almasoodi filed a complaint against Harris in the Delaware County Court of Common Pleas on January 4, 2021. The complaint alleged claims for declaratory judgment, fraud, mandatory injunctive relief, slander of title, and quiet title. On February 4, 2021, Harris filed an answer, counterclaims, and crossclaims against third-party defendants Siravo Construction and Robert Twyman. Harris' counterclaims sought recovery against Almasoodi for breach of contract, unjust enrichment, and foreclosure on the mechanic's lien under R.C. Chapter 1311.

**First Motion for Sanctions under Civ.R. 11 and R.C. 2323.51**

{¶8} On March 1, 2021, Almasoodi filed a combined motion to dismiss Harris' counterclaims under Civ.R. 12(B)(6), motion for sanctions against Harris and Villarreal

under Civ.R. 11 and R.C. 2323.51 for filing said counterclaims, and motion for judgment on the pleadings in favor of Almasoodi on his claims against Harris.

{¶9} Harris did not file any response to Almasoodi's March 1, 2021 combined motion.

{¶10} On April 20, 2021, the trial court issued its judgment entry ruling on Almasoodi's March 1, 2021 combined motion. First, the trial court granted Almasoodi's motion to dismiss Harris' counterclaims of breach of contract, unjust enrichment, and violation of R.C. Chapter 1311. Second, the trial court scheduled a hearing on Almasoodi's motion for sanctions against Harris and Villarreal. Third, the trial court found Almasoodi was entitled to judgment on his pleadings as to (1) declaratory judgment invalidating the mechanic's lien, (2) mandatory injunctive relief, (3) slander of title, and (4) quiet title. The trial court ordered Harris to release the mechanic's lien within 30 days from the date of the April 20, 2021 judgment entry. Fourth, the trial court found that Almasoodi's claims for fraud and request for judgment declaring that Harris filed the mechanic's lien in bad faith, as well as the amount of damages to be awarded to Almasoodi on his successful claims, remained pending before the trial court.

### Motion for Contempt

{¶11} On May 24, 2021, Almasoodi filed a motion to show cause and a motion for attorney's fees and sanctions. Almasoodi argued Harris was in contempt of the trial court's April 20, 2021 judgment because Harris did not file a release of the mechanic's lien by May 20, 2021. As of May 24, 2021, Harris had not filed the release of the lien. The trial court set the matter for a show cause hearing on June 21, 2021.

**Harris Motion for Relief from the April 20, 2021 Judgment**

{¶12} On June 21, 2021, Harris filed a motion for relief from the April 20, 2021 judgment entry pursuant to Civ.R. 60(B). In his motion, he argued he was entitled to relief from the trial court's dismissal of his counterclaims. Harris filed an affidavit and exhibits in support of his motion.

{¶13} Harris also filed a motion for leave to file an amended answer and third-party complaint, naming Siravo and Robert Twyman as third-party defendants. The trial court continued the show cause hearing to June 29, 2021.

**Show Cause and Sanctions Hearing**

{¶14} The show cause and sanctions hearing went forward on June 29, 2021. The issues at the hearing were (1) Almasoodi's March 1, 2021 motion for sanctions under Civ.R. 11 and R.C. 2323.51 against Harris and Villarreal and (2) Almasoodi's May 24, 2021 motion for contempt against Harris for its failure to comply with the April 20, 2021 judgment entry to release the mechanic's lien. Prior to taking evidence, the trial court inquired of the parties as to outstanding discovery requests. As part of his inquiry, the trial court asked Villarreal why the release of the lien had not been filed. (T. 12). Villarreal stated that in November 2020, Almasoodi's counsel was going to prepare the release for Harris to sign, but she never received the release from Almasoodi's counsel. (T. 12). The trial court asked Villarreal why she did not prepare the release of the lien because on April 20, 2021, the trial court ordered Harris to release the lien by May 20, 2021. (T. 13). Villarreal responded that she was not aware of the trial court's April 20, 2021 judgment entry until she received Almasoodi's subpoena. She did not check the docket. (T. 14, 15).

Villarreal stated that Harris was prepared to comply and sign the release of lien that day. (T. 15). The trial court then began the hearing.

{¶15} Villarreal and Harris testified at the hearing. Harris testified he was hired for the driveway construction project by Siravo and Robert Twyman, but he did not have a contract with Almasoodi. The last time he was on the Almasoodi property to do work was June 16, 2020. Harris was cross-examined on the differences between the filing of the mechanic's lien and the affidavit attached to his motion for relief from the April 20, 2021 judgment. The affidavit attached to the mechanic's lien stated the date he last furnished labor, service, or materials on the real property was July 16, 2020. Harris contended the July 16, 2020 date was a typographical error. The invoice attached to the mechanic's lien as the basis for the mechanic's lien was dated June 17, 2020. Harris' affidavit attached to his motion for relief from judgment stated that on June 16, 2020, Harris hand-delivered a copy of his final invoice to Siravo and Twyman. On August 16, 2020, when he had not been paid by Siravo or Twyman, he asked Villarreal to prepare a mechanic's lien. The affidavit stated that he mailed the original mechanic's lien to the Delaware County Recorder's office, but he was unaware that the office was closed due to the COVID-19 pandemic. For reasons unknown to him, but perhaps due to the pandemic, Harris averred the mechanic's lien was not recorded by the Delaware County Recorder until August 24, 2020.

{¶16} Harris was presented with an affidavit from the Delaware County Recorder which stated that on August 19, 2020, the Delaware County Recorder's office received a mechanic's lien from Harris regarding the Almasoodi property, delivered by U.S. mail, which included a check in an amount insufficient to pay the filing fees required for the lien.

(Ex. 31). At no time in August 2020 was the Recorder's office closed to the public due to COVID-19. The Delaware County Recorder's office returned the lien to Harris via U.S. mail, along with a notice that the lien was not filed. On August 24, 2020, Harris personally filed the mechanic's lien, with a check for the correct filing fees, at the Delaware County Recorder's office.

{¶17} Harris testified that he contacted Villarreal when the Recorder's office returned the mechanic's lien for insufficient funds. He told her that he called the Recorder's office and was going to bring a check to the Recorder's office.

{¶18} Harris acknowledged that as of the date of the hearing, he had not released the lien, even though he acknowledged he needed to release the lien in November 2020. He testified that he was unaware of the April 20, 2021 judgment entry ordering him to release the lien, even though he was served with the judgment entry by the Franklin County sheriff.

{¶19} Villarreal was presented with the Harris affidavit attached to the mechanic's lien. The affidavit stated the last date Harris furnished labor, service, or materials was July 16, 2020, and Villarreal acknowledged that information was not true. Villarreal agreed that she notarized the affidavit. Turning to Harris' motion for relief from judgment, prepared and filed by Villarreal, she stated in the motion that Almasoodi had paid Siravo in full on June 17, 2020. Villarreal testified that the mechanic's lien, filed on August 24, 2020, was untimely.

{¶20} Villarreal testified that on November 20, 2020, she responded to an email from Almasoodi's counsel stating that Harris would sign a release of the lien prepared by Almasoodi. On November 30, 2020, Almasoodi emailed Villarreal at her correct email

address with an attached lien release for Harris' signature. Villarreal testified that she never saw the November 30, 2020 email. On December 4, 2020, Villarreal responded by email stating that prior to releasing the lien, Harris required more information. Almasoodi responded by email on December 4, 2020, stating that if the lien was not released by December 12, 2020, he would file suit. Counsel for Almasoodi and Villarreal only corresponded by email or letter; they never called each other on the phone.

{¶21} While the case had been pending, Villarreal had not conducted any discovery. Villarreal testified that since she filed the counterclaim on February 4, 2021, she had not checked the docket in the case until a subpoena was filed in June 2021. Almasoodi presented Villarreal with Certificates of Service issued by the Delaware County Clerk to Villarreal's correct email address, specifically for the April 20, 2021 judgment entry. Villarreal could not recall getting that email.

**Second and Third Motion for Sanctions**

{¶22} On July 1, 2021, Almasoodi filed a response to Harris' motion for relief from judgment, and also a second motion for sanctions against Harris and Villarreal, arguing the claims raised in the motion for relief from judgment demonstrated a willful violation of Civ.R. 11 and frivolous conduct under R.C. 2323.51.

{¶23} Villarreal filed a post-hearing memorandum on July 2, 2021.

{¶24} Almasoodi filed a third motion for sanctions on July 19, 2021, arguing Villarreal and Harris engaged in frivolous conduct and in willful violation of Civ.R. 11 when they filed the post-hearing memorandum.

**First Judgment Entry Ordering Sanctions**

{¶25} On July 20, 2021, the trial court issued its ruling on Almasoodi's motion to show cause and for sanctions under Civ.R. 11 and R.C. 2323.51. The trial court first found Harris guilty of civil contempt pursuant to R.C. 2705.02(A) for his failure to comply with the April 20, 2021 judgment entry ordering him to release the mechanic's lien on or before May 20, 2021. The trial court noted Harris filed the release of the mechanic's lien with the Delaware County Recorder on June 30, 2021; therefore, the court found, Harris had purged his contempt. While Harris had purged the contempt, the trial court found it was appropriate to award attorney fees as part of the costs taxable to Harris. The trial court did not determine the amount of attorney fees to be awarded.

{¶26} Relevant to this appeal, the trial court next analyzed whether Harris and Villarreal engaged in frivolous conduct as defined by R.C. 2323.51 by filing counterclaims against Almasoodi, thereby entitling Almasoodi to an award of attorney fees and expenses. Based on the evidence presented at the June 29, 2021 hearing, the trial court found that Harris and Villarreal engaged in frivolous conduct when they asserted counterclaims of breach of contract, unjust enrichment, and violation of Ohio mechanic's lien laws. The trial court conducted an analysis of each counterclaim and under R.C. 2323.51(A)(2)(a)(ii), found each counterclaim was not supported by existing law and did not raise any good-faith argument for the modification of the law or creation of new law. Based on the adverse effects of Harris and Villarreal's frivolous conduct, the trial court found Almasoodi was entitled to an award of his attorney fees reasonably incurred in his defense against Harris' counterclaims.

{¶27} Finally, the trial court found in its judgment entry that Villarreal was in willful violation of Civ.R. 11 by signing the counterclaim pleadings. The evidence presented at the hearing demonstrated that Villarreal was aware before she filed the pleadings that there was no contract between Harris and Almasoodi, Almasoodi had paid Siravo in full on June 17, 2020, and the mechanic's lien was untimely and therefore, invalid. The trial court found Almasoodi was entitled to an award of attorney fees pursuant to Civ.R. 11.

{¶28} In order to determine reasonable attorney fees, the trial court ordered Almasoodi to file an itemized list of the legal services performed on his behalf in connection with the contempt, frivolous conduct, and Civ.R. 11 proceedings; time expended in rendering those services; and the hourly rate charged for those services. Harris and Villarreal were to respond accordingly.

**Affidavits of Attorney Fees**

{¶29} Almasoodi filed his affidavit of attorney fees on August 10, 2021. In the affidavit, Almasoodi's counsel and co-counsel recited their educational and professional history. Counsel's current hourly rate was $475-500 per hour and co-counsel's hourly rate was $250 per hour. In the instant matter, Almasoodi agreed to be billed at a blended hourly rate of $325 per hour. Counsel averred that billing statement attached to the affidavit reflected the expenses, time spent, and associated fees incurred/paid for by Almasoodi was $29,253.96 as of July 24, 2021. Total hours reflected in the billing statement relating solely to the frivolous conduct was 21.75 hours, resulting in fees incurred of $7068.75 and expenses of $89.15. Total hours reflected in the billing statement relating solely to the contempt was 1.5 hours, resulting in fees incurred of $487.50. Counsel stated, "[a]s it would be impossible to separate the time spent in

preparation for/attendance at the combined contempt/sanctions hearing, the total hours reflected in the attached billing that relate to both frivolous conduct/contempt (highlighted in blue) total 53.5, resulting in fees incurred of $17,387.50." Expenses were $183.09.

{¶30} On August 20, 2021, Villarreal filed an affidavit in response to Almasoodi's requests for sanctions pursuant to Civ.R. 11 and R.C. 2323.51. In her affidavit, Villarreal averred that she prepared the mechanic's lien for Harris on or about June 17, 2020. She gave him the affidavit and she believed that he mailed the affidavit for the mechanic's lien and invoice to the Delaware County Recorder's office. She further states in the affidavit:

11. Counsel for J Harris did not know, and had no reason to know, that the Affidavit had been returned to J Harris for failing to include the correct filing fees. Counsel only learned of the existence of the letter at the June 29, 2021, hearing when presented the copy of the letter by counsel for Plaintiffs.

* * *

13. Had Counsel for J Harris known this, J Harris would have been advised that his affidavit for Mechanic Lien was untimely and to not bother to file it.

14. J Harris did "text" counsel and advise her that he "had messed up" by forgetting to "send [the] check with lien to the Delaware Recorder. * * * See Exhibit A.

(Affidavit, August 20, 2021). Exhibit A attached to the email shows the text messages between Harris and Villarreal dated "Mon, Aug 24, 8:15 AM." The text messages state, "I messed up big time. I didn't send check with lien to Delaware. I just remember this morning." Villarreal responds on August 24, "drive there. Call them that you're coming." Harris responds, "OK I will. I am writing another check for Columbus in same amount for

amended lien." Villarreal responds, "ok." Harris responds, "He says it was sent back on the 19th. He said bring it back with the money. But I haven't received it yet." Villareal responds, "ok." (Affidavit, Exhibit A, August 20, 2021).

{¶31} Villarreal next averred that she did not learn until after the June 29, 2021 hearing that she did not receive Almasoodi's or the trial court's emails because her email system blocked the emails. In support, she attached Exhibits B and C, which were photographs of her laptop and the Franklin and Delaware County Clerks' online docketing system. The photographs show a pop-up screen stating, "Your password for the [online court docket] is at risk." (Affidavit, Exhibit C, August 20, 2021).

{¶32} Villarreal finally disputed that her conduct was frivolous or in violation of Civ.R. 11. She objected to the use of affidavits to establish the reasonableness of attorney fees. However, she did not request a hearing or provide contra evidence as to the reasonableness of attorney fees.

## Judgment Entry Awarding Attorney Fees

{¶33} On September 8, 2021, the trial court issued a judgment entry ruling on multiple pending motions. First, the trial court denied Harris' motion for relief from judgment. Second, the trial court set Almasoodi's second and third motions for sanctions for a hearing on October 8, 2021. Third, it granted Harris' motion for leave to file a third-party complaint against Robert Twyman, after Harris voluntarily dismissed its third-party complaint against Siravo. Fourth, the trial court denied Harris' motion for leave to amend its answer and crossclaim.

{¶34} Fifth, and most relevant to this appeal, the trial court addressed its July 20, 2021 award of sanctions pursuant to R.C. 2323.51 and Civ.R. 11 against Harris and

Villarreal. The trial court accepted the affidavits as appropriate evidence to determine the reasonableness of attorney fees. It found that Almasoodi's counsel stated it expended 21.75 hours addressing frivolous conduct and 1.5 hours addressing Harris' contempt. The trial court further found it was reasonable to spend 45.25 hours on the combined sanctions and show-cause hearing. The trial court calculated the lodestar figure by multiplying 68.5 total hours by the hourly rate of $325 to reach a total lodestar figure of $22,262.50. The expenses were determined to be $248.72. Accordingly, the trial court awarded Almasoodi $22,511.22 in attorney fees and expenses to be paid by Harris and Villarreal. The trial court did not differentiate the attorney fees and expenses awarded as to frivolous conduct, Civ.R. 11, or Harris' contempt.

### Withdrawal as Counsel

{¶35} On October 5, 2021, Villarreal provided the trial court with notice of her withdrawal as legal counsel for Harris.

### First Appeal

{¶36} Villarreal filed a pro se notice of appeal of the trial court's September 8, 2021 judgment entry. On June 14, 2022, this Court dismissed Villarreal's appeal of the September 8, 2021 judgment entry for lack of a final appealable order. We first found the September 8, 2021 judgment entry did not contain Civ.R. 54(B) language. We next found the trial court's denial of Harris' motion for relief from judgment was an interlocutory order because other claims remained pending before the trial court, such as Almasoodi's fraud claim against Harris, Almasoodi's second and third motions for sanctions against Harris and Villarreal, and Harris' third-party complaint.

**The Trial Court Proceedings Go On**

{¶37} On October 25, 2021, Almasoodi filed a partial motion for summary judgment on his claim for bad faith by Harris in the filing of the mechanic's lien. Harris contended that because there was no genuine issue of material fact that Harris acted with malice, Almasoodi was entitled to punitive damages.

{¶38} On July 25, 2022, the trial court granted Almasoodi's October 25, 2021 motion for partial summary judgment on his claim of bad faith. It held that while Almasoodi was entitled to punitive damages on the bad faith claim, damages would be determined at a later date because Almasoodi's claim for fraud against Harris remained pending.

**Second Award of Sanctions**

{¶39} The hearing on Almasoodi's second and third motion for sanctions was held on October 28, 2021. At the hearing, only Harris, Almasoodi, and Almasoodi's counsel appeared where Almasoodi offered an affidavit as his attorney fees and expenses into evidence. The trial court issued its judgment entry on November 12, 2021, granting the second motion for sanctions and denying the third motion for sanctions. Specifically, the trial court found that Harris and Villarreal engaged in frivolous conduct when they filed the motion for relief from judgment. The trial court further found Villarreal in violation of Civ.R. 11 for filing the motion for relief from judgment and providing false information in an August 20, 2021 affidavit. Based on Almasoodi's affidavit as to attorney fees and expenses, the trial court awarded Almasoodi $5,731.02 in reasonable attorney fees and expenses to be paid by both Harris and Villarreal.

**Final Judgment**

{¶40} On June 27, 2022, after Almasoodi's motion to reduce the trial court's rulings to judgment, the trial court issued a judgment entry ordering Villarreal and Harris to pay sanctions to Almasoodi in the amount of $28,242.24 within 30 days of the judgment entry. The trial court's judgment order stated, "[t]his judgment entry is a provisional order within the meaning of R.C. 2505.02(A)(3) and R.C. 2505.02(B)(4). *See Monda v. Shore*, 11th Dist. Portage No. 2008-P-0078, 2009-Ohio-2088, ¶ 23; *Dillon v. Big Trees, Inc.*, 9th Dist. Summit No. 23831, 2008-Ohio-3264, ¶¶ 10-14."

**Villareal Second Appeal**

{¶41} On June 29, 2022, Villarreal filed a motion with the trial court to stay enforcement of the June 27, 2022 judgment pending appeal. The trial court granted the motion.

{¶42} On June 29, 2022, Villarreal filed a pro se notice of appeal of the June 27, 2022 judgment entry. Harris has not filed an appeal.

**ASSIGNMENTS OF ERROR**

{¶43} Villarreal raises two Assignments of Error:

{¶44} "I. THE TRIAL COURT ABUSED ITS DISCRETION, AND COMMITTED PREJUDICIAL ERROR, IN FINDING THAT APPELLANT COUNSEL'S ACTIONS, IN THE COURSE OF THE CASE PROCEEDINGS, COMMITTED A WILLFUL VIOLATION OF OHIO CIV.R. 11, AND OF OHIO R.C. 2323.51, IN THE ABSENCE OF ANY EVIDENCE TO SUPPORT THAT FINDING AND AWARDING SANCTIONS AGAINST HER.

{¶45} "II. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR IN AWARDING ATTORNEY FEES AS AGAINST APPELLANT COUNSEL THAT WERE EXCESSIVE AND UNREASONABLE AND VIOLATIVE OF PROF.COND.R. 1.5(A)."

## ANALYSIS

### Almasoodi Motion to Strike

{¶46} Before we address the merits of Villarreal's appeal, we examine Almasoodi's December 5, 2022 motion to strike Villarreal's appellate reply brief. Villarreal did not file a response to the motion to strike. The record shows that Almasoodi's appellee's brief was filed on November 2, 2022 and served by email upon Villarreal on November 2, 2022. Villarreal filed her appellate reply brief on November 21, 2022. Pursuant to App.R. 18(A), Villarreal's reply brief was due 10 days after service of the brief of the appellee, which was November 12, 2022. November 12, 2022 was a Saturday, so the next business day would be November 14, 2022. Villarreal did not file a motion with this Court for leave to file her reply brief out of time. Accordingly, we grant Almasoodi's motion to strike Villarreal's reply brief for being out of time.

### Provisional Remedy

{¶47} In the trial court's June 27, 2020 judgment entry, it states the order is a provisional order pursuant to R.C. 2505.02(A)(3) and R.C. 2505.02(B)(4). It did not include Civ.R. 54(B) language. Before addressing the merits of the appeal, we must determine whether we have jurisdiction over the June 27, 2020 judgment.

{¶48} Under R.C. 2505.02(B)(4), an order is final if (1) the order either grants or denies a provisional remedy, (2) the order both determines the action with respect to the

provisional remedy and prevents a judgment in favor of the appealing party with respect to the provisional remedy, and (3) the reviewing court decides that the party appealing from the order will not be afforded a meaningful or effective remedy by an appeal following the final judgment as to all proceedings, issues, claims, and parties in the action. *Dillon v. Big Trees, Inc.*, 9th Dist. Summit No. 23831, 2008-Ohio-3264, ¶ 9 citing *State v. Muncie*, 91 Ohio St.3d 440, 446 (2001). A "provisional remedy" is defined as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86 of the Revised Code, a prima-facie showing pursuant to section 2307.92 of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code." R.C. 2505.02(A)(3). A motion for Civ.R. 11 sanctions creates a proceeding ancillary to and independent of the underlying case. *Dillon, supra* at ¶ 10.

{¶49} The second prong of the test requires the order both determine the action with respect to the provisional remedy and prevent a judgment in favor of the appealing party with respect to the provisional remedy. The Ohio Supreme Court described the analysis "[i]n determining whether appeal after final judgment would afford a meaningful or effective remedy, we consider whether there is a harm such that appeal after final judgment would not " 'rectify the damage.' " *Muncie*, 91 Ohio St.3d at 451, 746 N.E.2d 1092, quoting *Gibson–Myers & Assocs., Inc. v. Pearce*, 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999). Put another way, " 'the proverbial bell cannot be unrung.' " *Id.*, quoting *Gibson–Myers* at *2." *In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, ¶ 18. The trial court previously found that Almasoodi was entitled to sanctions

pursuant to Civ.R. 11 and R.C. 2323.51, and on June 27, 2022, the trial court ordered Villarreal to pay those sanctions with a finite sum of money within 30 days of the judgment entry. There was nothing left to be determined on the question of sanctions as to Villarreal.

{¶50} Finally, as to the third prong, the order must satisfy R.C. 2505.02(B)(4)(b). In *Dillon v. Big Trees, Inc.*, *supra*, cited by the trial court, the Ninth District described the analysis as follows:

> R.C. 2505.02(B)(4)(b) does not require "the absence of every theoretical remedy in order to find that appellant would be denied a 'meaningful' or 'effective' remedy following final judgment. This is particularly so when ... the court will be unable to fashion a remedy which would replace a potential loss of business goodwill, or repair business relationships with third parties...." *Bob Krihwan Pontiac-GMC Truck Inc. v. Gen. Motors Corp.*, 141 Ohio App.3d 777, 781 (2001). "[T]he statute asks whether a postponed appeal is sufficient to remedy the effects of the order granting or denying the provisional remedy, not whether appellants have other separate remedies available at the trial court level." *Premier Health Care Servs. Inc. v. Schneiderman*, 2d Dist. No. 18795, 2001 WL 1479241, at *3 (Aug. 21, 2001).
>
> A sanctions order, such as the one at issue in this case, requires an attorney to satisfy the sanction immediately. If the order is not appealable at that time, the attorney is left in the unenviable position of either satisfying the order, thereby mooting any appeal, or being held in contempt of court for failure to do so. Additionally, a trial court's finding that an attorney willfully

violated Rule 11 involves other, intangible detriments to an attorney's professional reputation. If a trial court incorrectly enters such an order against an attorney who is then forced to wait months or even years to appeal the order, a reviewing court may be "unable to fashion a remedy which would replace a potential loss of business goodwill, or repair [the attorney's] business relationships with third parties." *Bob Krihwan Pontiac-GMC Truck Inc.*, 141 Ohio App.3d at 781. Therefore, a trial court's order granting Rule 11 sanctions against an attorney precludes a meaningful and effective remedy on appeal after final judgment.

*Dillon v. Big Trees, Inc.,* 9th Dist. Summit No. 23831, 2008-Ohio-3264, 2008 WL 2583032, ¶¶ 12-13.

{¶51} In this case, we agree with the trial court to find that the June 27, 2022 judgment entry meets the requirements of a final order under the R.C. 2505.02(B)(4). Because it is a provisional remedy under R.C. 2505.02(B)(4), it is not subject to the requirements of Civ.R. 54(B). *Dillon*, 2008-Ohio-3264, ¶ 14 citing *State ex rel. Butler County Children Servs. Bd. v. Sage*, 95 Ohio St.3d 23, 25 (2002).

## I.

## Violations of R.C. 2323.51 and Civ.R. 11

{¶52} Villarreal contends in her appeal that the trial court erred when it found she engaged in frivolous conduct under R.C. 2323.51 and violated Civ.R. 11 when she filed the mechanic's lien, counterclaim, and motion for relief from judgment. We disagree.

{¶53} Civ.R. 11 and R.C. 2323.51 are the two methods available under Ohio law for the recovery of attorney's fees for claims of frivolous conduct. "Both authorize the

award of attorney fees as a sanction for frivolous conduct, [but] they have separate standards of proof and differ in application." *Martell v. Martell*, 5th Dist. Stark No. 2018CA00017, 2018-Ohio-4927, 2018 WL 6446618, ¶ 34 quoting *Lansky v. Brownlee*, 2018-Ohio-3952, 111 N.E.3d 135, ¶ 15 (8th Dist.) citing *Bikkani v. Lee*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 18. "A plain reading of R.C. 2323.51 and Civ.R. 11 reveals that 'both the statute and the rule impose the same requirement on an attorney: to prosecute only claims having merit under existing law.' " *Lanksy, supra* at ¶ 31 citing *Sigmon v. S.W. Gen. Health Ctr.*, 8th Dist. Cuyahoga No. 88276, 2007-Ohio-2117, ¶ 14.

<u>Frivolous Conduct and R.C. 2323.51</u>

{¶54} R.C. 2323.51 provides a court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct.

{¶55} A motion for sanctions brought under R.C. 2323.51 requires a three-step analysis by the trial court. The trial court must determine (1) whether the party engaged in frivolous conduct, (2) if the conduct was frivolous, whether any party was adversely affected by it, and (3) if an award is to be made, the amount of the award. *Bear v. Troyer*, 5th Dist. Guernsey Nos. 15 CA 17, 15 CA 24, 2016-Ohio-3363, 2016 WL 3219711, ¶ 55. The presence of one of the following factors supports a finding of frivolous conduct under R.C. 2323.51(A)(2)(a):

> (i) It obviously serves merely to harass or maliciously injure another party
> to the civil action or appeal or is for another improper purpose, including,
> but not limited to, causing unnecessary delay or a needless increase in the
> cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶56} The question of what constitutes frivolous conduct may be either a factual determination, or a legal determination. *Ferron v. Video Professor, Inc.*, 5th Dist. Delaware No. 08-CAE-09-0055, 2009-Ohio-3133, 2009 WL 1836486, ¶ 44, *Pingue v. Pingue*, 5th Dist. Delaware No. 06–CAE–10–0077, 2007–Ohio–4818, ¶ 20 citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 673 N.E.2d 628 (10th Dist.1996). A determination that the conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis. *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 233, 661 N.E.2d 782 (9th Dist.1995). With respect to purely legal issues, we follow a de novo standard of review and need not defer to the judgment of the trial court. *Wiltberger, supra*, at 51–52, 673 N.E.2d 628. However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations and will not disturb such factual

determinations where the record contains competent, credible evidence to support such findings. *Id.*

{¶57} Almasoodi filed two motions for frivolous conduct against Harris and Villarreal. In the March 1, 2021 motion for sanctions, Almasoodi argued Villarreal engaged in frivolous conduct when she filed the counterclaims against Almasoodi. In the July 1, 2021 motion for sanctions, Almasoodi contended that Villarreal engaged in frivolous conduct when she filed the motion for relief from judgment. In its July 20, 2021 and November 12, 2021 judgment entries, the trial court found under R.C. 2323.51(A)(2)(a)(ii) that the counterclaims and motion for relief from judgment were not warranted under existing law.

<u>Harris' Counterclaims</u>

{¶58} Harris, represented by Villarreal, brought three counterclaims against Almasoodi: breach of contract, unjust enrichment, and violation of Ohio mechanic's lien law. In its July 20, 2021 judgment entry, the trial court thoroughly examined each counterclaim to find none were warranted by existing law based on the underlying facts of the case.

{¶59} As to the breach of contract claim, which requires the existence of a contract between the parties, the facts establish there was no privity of contract between Almasoodi and Harris, the subcontractor on the construction project. "When some event occurs in which the general contractor cannot or will not pay, a lack of contractual privity between the subcontractor and the property owner usually will prevent the former from suing the latter for breach of contract." *Sterling Contracting, LLC v. Main Event Entertainment, LP*, 8th Dist. Cuyahoga No. 110965, 2022-Ohio-2138, 2022 WL 2256009,

¶ 15 quoting *Booher Carpet Sales v. Erickson*, 2nd Dist. Greene No. 98-CA-0007, 1998 WL 677159, 6 (Oct. 2, 1998). The counterclaim alleged there was a contract between Harris and Siravo, under which Harris alleged he was not paid for his services. Harris testified that he never had a contract with Almasoodi; he was hired by Siravo, the general contractor, to perform the work at Almasoodi's property. Villarreal testified at the June 29, 2021 hearing that she believed there was a verbal agreement between Harris and Almasoodi. (T. 39). She knew, however, that Harris did not issue an invoice to Almasoodi, only an invoice to Siravo. (T. 39). When asked whether her legal research showed there was no privity of contract between the homeowner and the subcontractor in the State of Ohio, Villarreal believed that was true but had not researched the issue before filing the counterclaim for breach of contract. (T. 40).

{¶60} Ohio law is well-settled as to whether a subcontractor can pursue an unjust enrichment claim against a homeowner:

> "[w]hen a subcontractor is not paid by the contractor and the owner has not paid the contractor for some aspect of the job at issue, the subcontractor can look to the owner for payment under a theory of unjust enrichment" for the funds or value retained under the unsatisfied contract price. *Moosehead Harvesting, Inc. v. Eureka Midstream, LLC*, 7th Dist. Monroe No. 18 MO 0015, 2019-Ohio-3961, ¶ 13, citing *Meridien Marketing Group, Inc. v. J & E Bldg. Group, Inc.*, 2d Dist. Miami No. 2011-CA-02, 2011-Ohio-4872, ¶ 30, *Ross-Co Redi Mix Co. v. Steveco, Inc.*, 4th Dist. Pickaway No. 95CA3, 1996 WL 54174, 1996 Ohio App. LEXIS 437 (Feb. 6, 1996), and *Brower Prods.*

*Inc. v. Musilli*, 2d Dist. Miami Nos. 98CA58 and 98CA59, 1999 WL 317122, 1999 Ohio App. LEXIS 2283 (May 21, 1999).

Under this theory, before a subcontractor can pursue an unjust enrichment claim, it must be established that the general contractor is " 'unavailable for judgment *and* unable to pursue the owner for the money that the subcontractor is seeking.' " (Emphasis added.) *BFI Waste Sys. of Ohio v. Professional Constr. & Safety Servs.*, 9th Dist. Lorain No. 06CA008972, 2008-Ohio-1450, ¶ 7, quoting *Booher Carpet Sales* at 17, " '[A]n unjust enrichment claim will not lie where the possibility exists that either the subcontractor could make a double recovery or the [owner] could pay twice for the same performance.' " *Id.*

*Sterling Contracting, LLC v. Main Event Entertainment, LP*, 8th Dist. Cuyahoga No. 110965, 2022-Ohio-2138, 2022 WL 2256009, ¶ 16. The subcontractor cannot establish a claim for unjust enrichment when the property owner has paid the general contractor the full amount of the original contract price. "In such a case, the subcontractor's claim fails because the owner has not been unjustly enriched. The owner has, in effect, already paid for the subcontractor's performance. Cases of this sort are common enough, both in Ohio and other states, that we can say this rule is axiomatic: when the property owner has fully paid another for particular improvements, the subcontractor may not recover in unjust enrichment for work or materials provided in connection with those improvements." *Booher Carpet Sales, Inc. v. Erickson*, 2nd Dist. Greene No. 98-CA-0007, 1998 WL 677159, *7.

{¶61} Prior to the filing of the action, Almasoodi provided Villarreal with a Lien Waiver from Siravo and copies of canceled checks to demonstrate that Almasoodi had paid Siravo in full for the driveway construction. In Harris' counterclaim, prepared by Villarreal, he stated that "Siravo and Plaintiffs have executed a Lien Waiver and Siravo thereafter received payment of the balance of the sums owed on the project to Siravo." At the hearing, Villarreal agreed that Almasoodi had paid Siravo but denied knowing if he had paid Siravo in full. (T. 41). Villarreal stated that while the matter had been pending for six months, she had not conducted any discovery. (T. 41).

{¶62} The trial court finally found that Harris and Villarreal had no good faith basis to file a mechanic's lien against Almasoodi's property or attempt to foreclose on the lien, as alleged in the counterclaim. Under R.C. 1311.011(B)(1), a subcontractor may not obtain a lien to secure payment for work performed on a home-construction contract when the homeowner has paid the original contractor in full and payment was rendered before the homeowner received a copy of the subcontractor's lien. The statute reads:

> (B) Notwithstanding sections 1311.02 to 1311.22 of the Revised Code, all liens, except mortgage liens, that secure payment for labor or work performed or materials furnished in connection with a home construction contract or in connection with a dwelling or residential unit of condominium property, that is the subject of a home purchase contract are subject to the following conditions:
>
> (1) No original contractor, subcontractor, material supplier, or laborer has a lien to secure payment for labor or work performed or materials furnished by the contractor, subcontractor, material supplier, or laborer, in connection

with a home construction contract between the original contractor and the owner, part owner, or lessee or in connection with a dwelling or residential unit of condominium property, that is the subject of a home purchase contract, if the owner, part owner, or lessee paid the original contractor in full or if the purchaser has paid in full for the amount of the home construction or home purchase contract price, and the payment was made prior to the owner's, part owner's, or lessee's receipt of a copy of an affidavit of mechanics' lien pursuant to section 1311.07 of the Revised Code.

An owner, part owner, or lessee may file with the county recorder of the county in which the property that is the subject of a home construction contract or a home purchase contract is situated an affidavit that the owner, part owner, or lessee has made payment in accordance with this division. Except if the owner, part owner, or lessee is guilty of fraud, any lien perfected on the property by any subcontractor, material supplier, or laborer for labor or work performed or for materials furnished is void and the property wholly discharged from the lien, if the lien was perfected after full payment was made in accordance with this division. The recorder shall index and record the affidavit in the same manner that releases of mortgages and other liens are indexed and recorded, and shall receive the same fees for indexing and recording the affidavit that are provided for the recording of leases.

{¶63} At the June 29, 2021 hearing, Almasoodi presented evidence that on November 12, 2020 and November 19, 2020, his counsel emailed Villarreal, at her correct

email address, that Harris' mechanic's lien was void under R.C. 1311.011(B)(1) because Almasoodi paid Siravo in full on June 17, 2020 before Harris recorded the mechanic's lien on August 24, 2020. (T. 27, Exs. 2, 6). He provided Villarreal with an Affidavit of Owners, with copies of the canceled checks, averring that Almasoodi had paid Siravo in full. (T. 27). On November 20, 2020, Villarreal emailed Almasoodi's counsel and acknowledged that Harris needed to release the mechanic's lien. (Ex. 7). In Harris' counterclaim, prepared by Villarreal, he stated that "Siravo and Plaintiffs have executed a Lien Waiver and Siravo thereafter received payment of the balance of the sums owed on the project to Siravo." At the hearing, Villarreal agreed that Almasoodi had paid Siravo but denied knowing if he had paid Siravo in full. (T. 41). Villarreal stated that while the matter had been pending for six months, she had not conducted any discovery. (T. 41).

{¶64} Upon the law and facts of this case, our de novo review demonstrates that Villarreal's conduct in filing the breach of contract, unjust enrichment, and foreclosure of the mechanic's lien counterclaims was not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law under R.C. 2323.51(A)(2)(a)(ii). After Villarreal filed the counterclaims that had no basis under existing law, Almasoodi was required to respond and defend against the counterclaims through a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. The trial court did not err in determining Villarreal's conduct was frivolous, which adversely impacted Almasoodi, for which he was entitled to attorney fees reasonably incurred in the defense against Harris' counterclaims.

<u>Motion for Relief from Judgment</u>

{¶65} On June 21, 2021, Harris filed a motion for relief from the April 20, 2021 judgment pursuant to Civ.R. 60(B).[1] On September 8, 2021, the trial court overruled Harris' motion for relief from the April 20, 2021 judgment. The trial court found there were no facts or law to support Harris' claims that the trial court incorrectly determined the April 20, 2021 judgment to dismiss Harris' counterclaims pursuant to Civ.R. 12(B)(6). The trial court found that Harris' attached affidavit contradicted his own arguments as to the validity of the mechanic's lien, and his claims for breach of contract and unjust enrichment. Harris averred that on June 17, 2020, Almasoodi paid Siravo the outstanding balance of the construction contract. Harris last worked on the project on June 17, 2020. The mechanic's lien was not recorded until August 24, 2020, which was outside the 60 days required by R.C. 1311.06. The motion for relief from judgment argued that the COVID-19 pandemic prevented Harris from timely filing the affidavit but the June 29, 2021 hearing demonstrated that the Delaware Recorder's office was open for business and the late filing was due to Harris' failure to submit the fee with the affidavit.

{¶66} Almasoodi filed a subsequent motion for sanctions pursuant to R.C. 2323.51 and Civ.R. 11 and in its November 12, 2021 judgment entry, the trial court found Villarreal engaged in frivolous conduct in violation of R.C. 2323.51(A)(1)(a)(ii) when she filed a motion for relief from the April 20, 2021 judgment entry. On appeal, Villarreal argues she did not engage in frivolous conduct when she filed the motion for relief from

---

[1] The April 20, 2021 judgment entry was not a final order. A motion for relief from judgment pursuant to Civ.R. 60(B) pertains to final judgments. *Wolf v. Associated Materials*, 5th Dist. Ashland No. 00C0A01350, 2000 WL 1262540, *2. Harris' motion for relief from judgment was therefore a motion for reconsideration.

judgment. We refer to our statement of R.C. 2323.51 and our standard of review above to analyze Villarreal's arguments that the trial court erred.

{¶67} We agree with the trial court's thorough analysis of Villarreal's arguments in her motion for relief from judgment to find they were not warranted under existing law or supported by a good-faith argument for the modification, extension, or reversal of existing law. The law and supporting facts establish Harris' counterclaims of breach of contract, unjust enrichment, and foreclosure of the mechanic's lien failed to state a claim upon which relief could be granted and Harris did not raise any new arguments in his motion for relief from judgment to sway the prior determination. The facts were established by Harris' own pleadings, affidavits, and court filings. By filing the motion for relief from judgment, Almasoodi was required to expend time and resources in responding to the motion, incurring attorney fees and expenses.

### Willful Violation of Civ.R. 11

{¶68} The trial court next found in its July 20, 2021 and November 12, 2021 judgment entries that Villarreal willfully violated Civ.R. 11 when she filed the counterclaims and filed the motion for relief from judgment, respectively. Civ.R. 11 states:

Every pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address, attorney registration number, telephone number, facsimile number, if any, and business e-mail address, if any, shall be stated. A party who is not represented by an attorney shall sign the pleading, motion, or other document and state the party's address. * * * The signature of an attorney or pro se party constitutes a certificate by the

attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted.

{¶69} Civ.R. 11 requires every pleading, motion, or other document of a party represented by an attorney to be signed by at least one attorney of record in the attorney's individual name. The attorney's signature represents the attorney's certification that: (1) the attorney has read the pleading, motion, or document; (2) to the best of the attorney's knowledge, information, and belief, there is good ground to support the pleading, motion, or document; and (3) the pleading, motion, or document is not interposed for delay. *Filonenko v. Smock Construction*, 10th Dist. Franklin No. 17AP-854, 2018-Ohio-3283, 2018 WL 3949522, ¶ 13. Civ.R. 11 only authorizes sanctions against the attorney, not the client. *Martell v. Martell*, 5th Dist. Stark No. 2018CA00017, 2018-Ohio-4927, 2018 WL 6446618, ¶ 36 citing *Stevens v. Kiraly*, 24 Ohio App.3d 211, 212, 494 N.E.2d 1160 (9th Dist.1985).

{¶70} "If any one of the three Civ.R. 11 requirements is not satisfied, the trial court must then determine whether the violation was willful as opposed to merely negligent." *Namenyi v. Tomasello*, 2nd Dist. Greene No.2013–CA–75, 2014–Ohio–4509, ¶ 14 quoting *Ponder v. Kamienski*, 9th Dist. Summit No. 23270, 2007–Ohio–5035, ¶ 36.

{¶71} R.C. 2323.51 is broader in scope than Civ.R. 11 because it employs an objective standard in determining whether sanctions may be imposed for frivolous conduct. *Stone v. House of Day Funeral Serv., Inc.*, 140 Ohio App.3d 713, 721, 748 N.E.2d 1200 (6th Dist.2000) citing *Kester v. Rodgers*, 11th Dist. Lake Nos. 93-L-056, 93-L-072, 1994 WL 188918 (11th Dist.1994); *State Farm Ins. Cos. v. Peda*, 11th Dist. Lake No. 2004-L-082, 2005-Ohio-3405, ¶ 25.). Therefore, a finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed. *Smith v. Anderson*, 6th Dist. Lucas No. L-22-1081, 2023-Ohio-108, 2023 WL 179659, ¶ 16 citing *Wauseon v. Plassman*, Fulton App. No. F-96-003, 1996 WL 673521 (Nov. 22, 1996). In contrast, when determining whether sanctions are warranted under Civ.R. 11, the relevant inquiry is whether the attorney's actual intent or belief was willful or merely negligent. *Stone v. House of Day Funeral Serv., Inc.*, 140 Ohio App.3d 713, 721, 748 N.E.2d 1200 (6th Dist.2000), citing *Haubeil & Sons Asphalt & Materials, Inc. v. Brewer & Brewer Sons, Inc.*, 57 Ohio App.3d 22, 23, 565 N.E.2d 1279 (4th Dist.1989). Civ.R. 11 applies a subjective bad-faith standard looking at whether the attorney had a good faith belief to support the pleading. *Id.* If a willful violation of the rule is found, the court may determine whether and what type of sanction is warranted. *Id.*, citing *Woods v. Savannah Foods & Indus., Inc.*, 6th Dist. Lucas No. L-92-160, 1993 WL 49796 (Feb. 26, 1993). The

trial court's decision to impose sanctions cannot be reversed absent an abuse of discretion. *Ferron*, 2009–Ohio–3133 at ¶ 77.

{¶72} Villarreal contends the trial court abused its discretion when it found that she acted willfully and in bad faith when she filed Harris' counterclaims and motion for relief from judgment. Her testimony in this case, through the June 29, 2021 hearing and supporting affidavits, was that she believed her client's representations as to the relevant dates, she did not receive Almasoodi's emails, and she did not receive service from the Delaware Clerk of Courts. She contends her actual intent in this case was mere negligence, not willful.

{¶73} The record in this case challenges Villarreal's interpretation that to the best of her knowledge, information, and belief, there was good ground to support the pleading, motion, or document. As early as November 2020, Villarreal had information that Harris did not have a contract with Almasoodi, Almasoodi had paid Siravo in full on June 17, 2020, and the August 24, 2020 mechanic's lien was therefore invalid. Counsel for Almasoodi emailed Villarreal multiple times regarding the invalidity of the mechanic's lien, some emails to which Villarreal replied and some she denied receiving. On November 20, 2020, Villarreal replied to Almasoodi's November 19, 2020 email, where she stated that her client understood he needed to release the mechanic's lien and would sign the release if Almasoodi provided Villarreal a draft. The trial court found that while she had that information and had agreed that Harris should release the lien, she proceeded to file the counterclaims alleging a breach of contract, unjust enrichment, and sought foreclosure of the mechanic's lien that were not supported by law or fact. At the June 29, 2021 hearing, Villarreal stated Harris would sign the release of the lien.

{¶74} The evidence of Villarreal's willfulness, rather than negligence, was compounded by the motion for relief from judgment. The motion for relief from judgment was filed with Harris' affidavit, that after the June 29, 2021 hearing, was proven to contain false statements. Harris blamed the COVID-19 pandemic for the untimely recorded lien, which was categorically false. The failure to timely file the lien was due to Harris' failure to submit the filing fee. On August 24, 2020, upon Villarreal's recommendation, Harris returned to the Recorder's office to file the lien in person. The trial court further found that Villarreal's August 20, 2021 affidavit, filed in response to Almasoodi's request for sanctions, contained false statements. Villarreal averred that she prepared the affidavit for the mechanic's lien and provided it to Harris on June 17, 2020. A review of the complaint showed Villarreal notarized the affidavit for the mechanic's lien on August 14, 2020.

{¶75} In this case, we cannot say the trial court abused its discretion when it found Villarreal's behavior in this case was willful and not merely negligent. Regardless of the information provided by Almasoodi that there was no cause of action, and judgments by the trial court finding that there was no cause of action, Villarreal did not independently investigate the representations of her client or check the trial court's docket. She continued to file pleadings, motions, and sworn statements to pursue the matter. Under Civ.R. 11, the trial court may award sanctions for such behaviors.

{¶76} Villarreal's first Assignment of Error is overruled.

**II.**

{¶77} In her second Assignment of Error, Villarreal contends the trial court erred in determining the amount of reasonable attorney fees and expenses. We disagree.

{¶78} In *Canton v. Irwin*, 5th Dist. Stark No. 2011CA00029, 2012–Ohio–344, this Court discussed the award of attorney's fees. We discussed the standard by which a court of appeals may review an award of attorney's fees:

"It is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Bittner v. Tri–County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 146, 569 N.E.2d 464, quoting *Brooks v. Hurst Buick–Pontiac–Olds–GMC, Inc.* (1985), 23 Ohio App.3d 85, 91, 491 N.E.2d 345. "There are over 100 separate statutes providing for the award of attorney's fees; and although these provisions cover a wide variety of contexts and causes of action, the benchmark for the awards under nearly all of these statutes is that the attorney's fee must be 'reasonable'." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* (1986), 478 U.S. 546, 562, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439.

* * *

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart* (1983), 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40. *See, also Bittner v. Tri–County Toyota, Inc., supra*, 58 Ohio St.3d at 145, 569 N.E.2d at 466.

To establish the number of hours reasonably expended, the party requesting the award of attorney fees "should submit evidence supporting the hours worked...." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The number of hours should be reduced to exclude "hours that are excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. Id. at 434, 103 S.Ct. at 1939–40. A reasonable hourly rate is defined as "the 'prevailing market rate in the relevant community.' " *Blum v. Stenson* (1984), 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891.

The party requesting an award of attorney fees bears the burden "to produce satisfactory evidence—in addition to the attorney's own affidavit—that the requested rate [is] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson, supra* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11.

*Hunt v. Allen*, 5th Dist. Licking No. 11-CA-70, 2012-Ohio-1212, 2012 WL 983191, ¶¶ 40-41 quoting *Canton v. Irwin*, at ¶ 11, ¶ 13–15.

{¶79} To enable the appellate court to conduct a meaningful review, "the trial court must state the basis for the fee determination." *Id.* citing *Bittner*, 58 Ohio St.3d at 146, 569 N.E.2d 464.

{¶80} On July 20, 2021, the trial court ordered the parties to submit affidavit evidence of reasonable attorney fees and expenses. Almasoodi provided the affidavit of his counsel's attorney fees and expenses on August 10, 2021; Villarreal filed an affidavit

on August 20, 2021. Villarreal's affidavit, however, did not respond to Almasoodi's itemized list of attorney fees and expenses with contradictory evidence of reasonable attorney fees and expenses. Villarreal did not appear at the October 28, 2021 hearing on Almasoodi's second and third motion for sanctions where Almasoodi presented his second affidavit for attorney fees and expenses. Instead of raising these arguments to the trial court, she argues on appeal that the trial court heard no evidence regarding a fee agreement between Almasoodi and his counsel, hourly rates, or testimony about time, labor, effort, or difficulty of the matter presented. Upon review of Almasoodi's affidavit, we find the affidavit submitted pursuant to the trial court order addressed those topics.

{¶81} In its judgments, the trial court stated it reviewed Almasoodi's affidavit and itemized statements. It found counsel's rate of $325 per hour to be reasonable based on counsel and co-counsel's educational and professional history. The trial court reviewed the statements to determine the numbers of hours spent responding to Harris' pleadings and motions with related expenses to ultimately award $28,242.24 in reasonable attorney fees and expenses. Villarreal contends on appeal that this amount is so high so as to shock the Court's conscience, considering the mechanic's lien was valued at $7,035.53. The record before us, however, supports the trial court's determination as to reasonable attorney fees and expenses. We must defer to the trial court absent an abuse of discretion and on this record, we cannot find the trial court erred.

{¶82} Villarreal's second Assignment of Error is overruled.

## CONCLUSION

{¶83} The judgment of the Delaware County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.